**BRIGGS TRANSPORTATION CO., Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and all of its affiliated local unions; Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent); International Association of Machinists and AeroSpace Workers, AFL–CIO and all its local unions; and Local Union No. 710 (Chicago) affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.**

**No. 3–84–542.**

United States District Court,
D. Minnesota,
Third Division.

April 26, 1984.

Steven P. Wiener, St. Paul, Minn., and Joe A. Walters, James A. Rubenstein, Minneapolis, Minn., for plaintiff.

Scott D. Soldon, Milwaukee, Wis., for Intern. Broth. of Teamsters.

Richard Miller, Minneapolis, Minn., for Intern. Assn. of Machinists and Aerospace Workers.

## ORDER

MAGNUSON, District Judge.

A hearing was held before the undersigned on April 24, 1984 upon plaintiff's request for a preliminary injunction. Steven P. Weiner, Esq., James A. Rubenstein, Esq., and Joe A. Walters, Esq., appeared on behalf of plaintiff. Richard Miller, Esq., appeared on behalf of International Association of Machinists and AeroSpace Workers. Scott D. Soldon, Esq., appeared on behalf of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Plaintiff Briggs Transportation Company is a motor carrier located in the upper midwest and defendants are various unions with contracts with Briggs. On January 25, 1983 Briggs filed a Chapter 11 petition under the Bankruptcy Code. As part of its reorganization, Briggs attempted to reject its collective bargaining agreement with the defendants. Following the Supreme

Court's ruling in *NLRB v. Bildisco and Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Bankruptcy Court entered an order on March 30, 1984 approving Briggs' rejection of its collective bargaining agreements.

Briggs immediately notified its employees of new wage schedules to be effective April 1, 1984. In response, the International Brotherhood of Teamsters struck Briggs on April 5 and 6, 1984. Briggs then decided to temporarily withdraw its new wage schedules and the IBI members returned to work. Briggs now seeks to institute the new wage schedules it announced on April 1, 1984. Anticipating that the defendants will strike, Briggs filed this action in federal district court seeking an injunction preventing the defendants from engaging in a series of strike related activities designed to disrupt its normal business operations.[1]

The threshold issue involved in this action is whether the Norris-LaGuardia Act limits this court's power to issue an injunction. 29 U.S.C. § 101 states in part that:

> No *court* of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a *labor dispute,* except in strict conformity with the provisions of this Act....

*Id.* There is no question that a Federal District Court is a "court" within the meaning of 29 U.S.C. § 101. *See* 29 U.S.C. § 113(d) ("The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress...."). The next issue is whether the present controversy grows out of a "labor dispute" within the meaning of 29 U.S.C. § 101.

The term "labor dispute" is defined in 29 U.S.C. § 113(c) as:

> Any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment....

The Supreme Court has recognized that the term "labor dispute" must be given a broad definition to effectuate the purposes of the Act. *Bulk Terminals, Inc. v. International Longshoremen's Association,* 457 U.S. 702, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982). In the present case there can be very little dispute that the action concerns the terms or conditions of employment and hence is a "labor dispute." The very basis of the present action is Briggs' fear that the defendant unions will engage in unlawful picketing activities *after Briggs institutes its reduced wage schedule* in conformity with the Bankruptcy Court's order authorizing a reduction in wages. Nothing could be more central to the employer-employee relationship than the wages and fringe benefits employees will receive for their services. Thus, this court believes that the dispute between Briggs and its unions arises out of a labor dispute within the meaning of the Norris-LaGuardia Act. *See e.g. Matter of Crowe & Associates, Inc.,* 713 F.2d 211 (6th Cir.1983); *In re Petrusch,* 667 F.2d 297 (2d Cir.1981), *cert. denied,* 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1981).

Since the present case arises out of a labor dispute the court must follow the procedural requirements set forth in the Norris-LaGuardia Act. The principal operative provisions of the Norris-LaGuardia Act governing the issuance of injunctions are 29 U.S.C. §§ 104, 105 and 107. Section 104 sets forth a series of activities which a federal court may not, under any circumstances, enjoin. Section 105 prohibits a federal court from issuing any injunction on the ground that persons involved in a labor dispute are engaged in an unlawful combination or conspiracy. Unlike §§ 104 and 105, § 107 specifically contemplates that a federal court may issue an injunction prohibiting certain activity; generally limited to unlawful conduct. However, § 107 goes on to list a series of procedural and substantive requirements *which must be rigidly complied with* before a court issues an injunction. It is unnecessary for

---

**1.** The specific relief requested by Briggs is set   out in the appendix to this opinion.

this court to analyze the requirements of § 107 in detail since it is apparent that Briggs has failed to meet those requirements.

The central theme of Briggs' argument is that this court must balance the competing policies of the Bankruptcy Code and the Norris-LaGuardia Act in determining whether to issue an injunction. Specifically, Briggs asserts that Rule 65 of the Federal Rules of Civil Procedure and the Supreme Court's recent decision in *NLRB v. Bildisco and Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) authorize this court to enjoin the defendants. For several reasons, this court cannot accept Briggs' contention.

Rule 65(e) of the Federal Rules of Civil Procedure provides in part that:

> These rules do not modify any statute of the United States relating to temporary restraining orders and preliminary injunctions in actions affecting employer and employee....

*Id.* The provision cited above lends further support to this court's conclusion that it is bound by the provisions of the Norris-LaGuardia Act in issuing an injunction.

In *NLRB v. Bildisco and Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the United States Supreme Court held (1) that a debtor-in-possession could reject a collective bargaining agreement with a union, and (2) a debtor-in-possession did not commit an unfair labor practice by unilaterally rejecting a collective bargaining agreement. *Id.* at 1191–92. The basis of the Court's decision that a debtor-in-possession could reject a collective bargaining agreement was the language of 11 U.S.C. § 365(a) which permits a trustee, subject to court approval, to "assume or reject any executory contract or unexpired lease of the debtor." *Id.* The Supreme Court found that a collective bargaining agreement was an "executory contract" and that there was no exception in the Code for collective bargaining agreements. Thus, based upon the language of the statute, the Supreme Court permitted the debtor-in-possession to reject its collective bargaining agreement.[2]

*Bildisco* involved a relatively narrow issue and an interpretation of an entirely different statute (the National Labor Relations Act) than the present action. The Supreme Court in *Bildisco* never even referred to the Norris-LaGuardia Act. This court is not persuaded by Briggs' contention that *Bildisco* signals a radical shift in the relationship between the Bankruptcy Code and the Norris-LaGuardia Act. The appropriate balance between the competing policies of the Bankruptcy Code and the Norris-LaGuardia Act was struck by Congress when it enacted the Norris-LaGuardia Act and this court is in no position to change that result.

Briggs argues that the present controversy arises out of a bankruptcy proceeding and hence is not a labor dispute. While it is true that this action arising out of a bankruptcy proceeding for purposes of 28 U.S.C. § 1471 which vests jurisdiction in actions arising under or related to cases under Title 11 in the district courts, that does not mean that a district court may ignore the provisions of the Norris-LaGuardia Act. To ignore the Norris-LaGuardia Act would require this court to conclude that Congress impliedly repealed the Norris-LaGuardia Act in cases involving a debtor in the process of reorganization. The court is unwilling to believe that Congress would have taken such a drastic step in such a silent fashion. *See e.g. Matter of Crowe & Associates, Inc.,* 713 F.2d 211 (6th Cir.1983) (Holding that Congress did not repeal Norris-LaGuardia Act by adopting automatic stay provision of Bankruptcy Code).

Briggs also argues that 28 U.S.C. § 1471(b) itself gives the district court jurisdiction to issue the present injunction

---

**2.** The order permitting Briggs to reject their collective bargaining agreement was based upon the Supreme Court's decision in *Bildisco.* This court does not quarrel with the Court's holding in *Bildisco* or the Bankruptcy Court's order permitting Briggs to reject its collective bargaining agreement. That order is presently before this court on appeal from the Bankruptcy Court and this court expresses no opinion on the merits of the appeal.

without complying with the Norris-LaGuardia Act. Section 1471(b) provides that:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.

Briggs argues that if the Norris-LaGuardia Act took the jurisdiction to enjoin activities related to a labor dispute away from the federal courts, the various state courts acquired that jurisdiction. Briggs goes on to argue that notwithstanding that fact, § 1471(b) gave the jurisdiction taken away by the Norris-LaGuardia Act back to the district courts. The fallacy in this argument is that § 1471(b) only concerns Acts of *Congress* that *confer exclusive* jurisdiction on a court other than the district court. There is no Act of Congress conferring exclusive jurisdiction over the subject of labor-related injunctions upon state courts. Thus, this argument must be rejected.

Finally, Briggs asserts that to deny it an injunction is to render the Bankruptcy Court's order authorizing rejection of its collective bargaining agreement meaningless since it cannot successfully operate unless the picketers are kept far enough away to give it "breathing space." [3] While it is true that this court has the authority to issue an injunction in aid of a Bankruptcy Court's order, when such an injunction is requested in the context of a labor dispute the court must abide by the Norris-LaGuardia Act. Moreover, the argument that Briggs may go out of business absent the requested injunction is no more than a recognition that one of the unfortunate side effects of labor-management strife is economic loss to the employers and employees. The labor laws have been designed to create a structural framework for dealing with labor disputes but not to prohibit one side from utilizing its economic power. Nor do they prohibit a union from utilizing its power of persuasion by way of peaceful picketing. Thus, while *Bildisco* may have authorized Briggs to cut its employees' wages by $3 per hour, it does not prohibit the employees from complaining.

Since the provisions of the Norris-LaGuardia Act apply to the present action, Briggs must abide by the provisions of 29 U.S.C. § 107 in seeking an injunction. Briggs has clearly failed to meet these requirements.

Accordingly, IT IS ORDERED that:

1. Plaintiff's request for a preliminary injunction is denied in all respects.

## APPENDIX

Specifically, Briggs seeks an injunction: restraining defendants, their affiliated unions, their officers, agents, servants, employees and attorneys and those persons in active concert or in participation with them who shall receive actual notice of this order by personal service or otherwise from engaging in any of the following conduct:

1. Interference or threat of interference with the normal business operations of Briggs Transportation Co.

2. Picketing or the display of any picket signs within 2000 feet of any terminal, dock facility, or other place of business of Briggs Transportation Co., its agents, customers, suppliers or vendors;

3. Interference or threat of interference with the intrastate or interstate, local or over-the-road movement of equipment and/or freight of Briggs Transportation Co., its agents or customers, including, but not limited to, vandalizing, tampering, blocking, or following said equipment and/or freight.

4. Interfering or threat of interference with the real or personal property of Briggs Transportation Co. or its agents, customers, employees, suppliers or vendors at any Briggs Transportation Co. terminal or any other dock or busi-

---

3. The "breathing space" requested is an order keeping picketers *2000* feet from Briggs' property. Even assuming the Norris-LaGuardia Act did not apply, there would be serious First Amendment problems in issuing such an order.

ness facility of an agent, customer, supplier or vendor.

5. Interfering or threatening to interfere with any employee, agent, customer, supplier or vendor of Briggs Transportation Co. or their families, whether on or off duty, during or after business hours, including, but not limited to, following, threatening, assaulting or harassing, by any means, including the use of the telephone.