**In re AMERICAN PROVISION CO., Debtor.**

**Bankruptcy No. 4–84–1546.**

United States Bankruptcy Court, D. Minnesota.

Dec. 10, 1984.

**908**

Rodney A. Honkanen, Donald R. Johnston, Wagner, Johnston & Falconer, Minneapolis, Minn., for petitioner/debtor.

Kurt F. Walther, Peterson, Bell & Converse, St. Paul, Minn., for Miscellaneous Drivers, Helpers and Warehousemen's Union, Local No. 638, an affiliate of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

## ORDER DENYING APPROVAL OF REJECTION OF COLLECTIVE BARGAINING AGREEMENTS

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of the debtor for an order approving its rejection of two collective bargaining agreements between the debtor and the Miscellaneous Drivers, Helpers and Warehousemen's Union, Local No. 638, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union). Rodney A. Honkanen and Don R. Johnston appeared for the debtor and Kurt F. Walther appeared for the Union. Based on the evidence at the hearing, the file and records and the argument of counsel, I make the following:

## MEMORANDUM ORDER

Subsequent to the enactment of the Bankruptcy Reform Act of 1978, P.L. 95–598, 92 Stat. 2549, collective bargaining agreements have been governed by 11 U.S.C. § 365 dealing with executory contracts. Most courts found that collective bargaining agreements were executory contracts subject to rejection by trustees and by debtors in possession under § 365. There was, however, much dispute as to the appropriate standard to be applied by courts in deciding whether or not to approve such rejection. *See, In re Briggs Transportation Co.*, 39 B.R. 343, 352–353, n. 2 (Bkrtcy.Minn.1984). Various issues regarding rejection of collective bargaining agreements and the standard to be applied were resolved by the Supreme Court in *NLRB v. Bildisco & Bildisco*, —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

The Supreme Court's resolution was apparently not to the satisfaction of Congress. As part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333, new § 1113 was added to Title 11.[1] Thus, the debtor's motion is governed by the provisions of 11 U.S.C. § 1113 which provides in part:

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debt-

---

**1.** Section 1113 was added by § 541(a) of P.L. 98–353. Pursuant to § 541(c) of P.L. 98–353, the new section was effective upon the date of enactment of the Act, July 10, 1984.

or and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

■ While § 1113 is not a masterpiece of draftsmanship, I think nine requirements for court approval of the rejection of collective bargaining agreements can be gleaned from § 1113.

1. The debtor in possession must make a proposal to the Union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

5. The debtor must provide to the Union such relevant information as is necessary to evaluate the proposal.[2]

6. Between the time of the making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the Union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The Union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.

■ Section 1113 does not discuss the burden of proof of showing that the requirements have been met. However it seems to me that, since these nine requirements form the bases of the debtor's motion, the debtor bears the burden of persuasion by the preponderance of the evidence on all nine elements. However that is not to say that the burden of going forward with the evidence should in all instances be on the debtor. Regardless of where the ultimate burden of persuasion lies, assignment of the initial burden of production depends on the circumstances. *In re Martin,* 554 F.2d 55, 58 (2d Cir.1977), *quoted in In re Martin,* 698 F.2d 883, 887 (7th Cir. 1983). *See, also, In re Gem Sleepwear Co.,* 461 F.Supp. 644 (S.D.N.Y.1978), *In re Magnusson,* 14 B.R. 662 (Bkrtcy.N.D.N.Y. 1981).

■ In particular, as to elements 5, 7 and 8, I think that to a certain extent the burden of production of evidence should lie with the Union. As to element 5, I think that it is incumbent upon the debtor in the first instance to show what information it has provided to the Union. It is then in-

---

**2.** This requirement is very similar to the second requirement, although somewhat different. The second requirement dictates that the proposal be *based* on certain information and the fifth requirement requires the debtor to *provide* that information to the Union.

cumbent upon the Union to produce evidence that the information provided was not the relevant information which was necessary for it to evaluate the proposal. Likewise as to element 7, once the debtor has shown that it has met with the Union representatives, it is incumbent upon the Union to produce evidence that the debtor did not confer in good faith. And lastly as to element 8, once the debtor has shown that the Union has refused to accept its proposal the Union must produce evidence that it was not without good cause. Again, once the Union has come forward with evidence on these three elements, the ultimate burden of persuasion on each still lies with the debtor.

Applying all this analysis to this case, I do not think the debtor has met its burden.

At the time of the hearing on the motion, the debtor employed only two employees subject to the collective bargaining agreements, one of whom was working only part time. The debtor has approximately 17 employees altogether. The number of Union employees has decreased from eight at the time of the collective bargaining agreements in 1982.[3] While there have been reductions in the number of other employees as well, it is not clear how much that reduction has been. At least one of the other employees has taken an actual pay cut while others of the remaining non-Union employees have agreed to work longer hours for the same pay.

The proposal made by the debtor was essentially to reduce the hourly wage provided for in the Drivers' collective bargaining agreement from $11.50 per hour to $8.00 per hour and to substitute the debtor's insurance for the current insurance, provided by the Teamsters at the expense of the debtor. The debtor currently pays $32.06 per week for the Union employees' insurance. The debtor's agreement with its other employees provides for it to pay $45.00 per month, to provide insurance only for the employee, with family coverage to be paid for by the employee if desired.[4] Since the current Union employees are working a total of 65 hours per week,[5] the $3.50 per hour proposed reduction would save the debtor $227.50 per week in wages, or approximately $1,000.00 per month. At $32.06 per week per employee for the Union health insurance, the cost to the debtor for the two employees is approximately $275.00 per month which it would reduce to $90.00 per month under its proposal for a saving to the debtor of approximately $185.00 per month. Thus under the debtor's proposal it would save approximately $1,185.00 per month in wages and benefits for the two Union employees.[6]

The debtor's total salaries and wages are approximately $24,000.00 per month.[7] The debtor's total operating expenses are approximately $58,000.00 per month. Thus the savings under the debtor's proposal amounts to approximately 2% of the debtor's monthly operating expenses. Thus I do not feel that I can find that the proposed modifications are necessary to permit the reorganization of the debtor. This is especially so since the current collective bargaining agreement expires in August of 1985, approximately eight months from now. If the debtor's

---

3. There are two collective bargaining agreements: one covering the warehousemen of whom there were four in 1982 and another covering the drivers of which there were also four in 1982. The two current employees are both covered by the drivers' contract.

4. The debtor pays for family coverage for two of its non-union employees.

5. As noted, one employee works a full 40-hour week while the other apparently averages approximately 25 hours per week.

6. I assume there would also be some additional small savings in such things as employer's contribution towards FICA; however, there was no evidence on what any of these additional amounts might be.

7. I arrived at this figure from the debtor's testimony that under its proposal its total wages and salaries would be $22,500.00 per month and adding to that amount the savings which I have computed.

rejection of its collective bargaining agreement was approved, such rejection would not affect the Union's status as the authorized representative of those employees nor the debtor's obligation to bargain with the Union.[8] *NLRB v. Bildisco & Bildisco,* — U.S. —, 104 S.Ct. 1188, 1201, 79 L.Ed.2d 482 (1983); National Labor Relations Act § 8(a)(5), 29 U.S.C. § 158(a)(5) (1982). *See also, NLRB v. Burns Security Services, Inc.,* 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972); National Labor Relations Act § 2(1) & (2), 29 U.S.C. § 152(1) & (2) (1982). Basically that will be the same situation faced by the parties in August 1985 when the current agreements expire. Thus the debtor seeks only to accelerate that bargaining process by approximately eight months.

On the issue of whether the debtor conferred in good faith, I think the Union has met its burden of producing evidence that the debtor did not confer in good faith and the debtor has not really met its burden of proving that it has. In fact, there was apparently only one meeting at which the debtor made a proposal which the Union ultimately rejected but the Union indicated both at the meeting and subsequently a willingness to discuss the matter further. The debtor did not avail itself of these types of discussions. Frankly, I am left with the impression that the debtor's attempts to confer were perfunctory only and meant only to literally meet the requirements of the statute.

For all these reasons I do not feel that the debtor has shown that it is entitled to reject its collective bargaining agreements.

THEREFORE, IT IS ORDERED:

The debtor's motion for approval of its rejection of its collective bargaining agreements with Miscellaneous Drivers, Helpers and Warehousemen's Union Local 638 is denied.

---

**8.** As a general principle, rejection of a collective bargaining agreement does not affect the rights and responsibilities under the National Labor Relations Act. *Briggs Transportation Co. v. In-*

*ternational Brotherhood of Teamsters,* 40 B.R. 972 (D.Minn.1984), *aff'd* 739 F.2d 341 (8th Cir. 1984).