**In re COOK UNITED, INC., Cook-Car, Inc. and Washington Distributors, Inc., Debtors and Debtors-In-Possession.**

**Bankruptcy No. B84-02537.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

June 28, 1985.

Lee J. Hutton, Duvin, Flinker & Cahn, Cleveland, Ohio, for debtors and debtors-in-possession.

Mark A. Rock, Schwarzwald, Robiner, Wolf & Rock, Cleveland, Ohio, for Unions.

## MEMORANDUM OF OPINION AND ORDER

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the debtors' motion for relief pursuant to 11 U.S.C. Section 1113(e), which seeks modification of existing collective bargaining agreements, the testimony, evidence and briefs of counsel.

The debtors ("Cook") owners and operators of a chain of more than 50 discount department stores located throughout Ohio, Indiana, West Virginia, North Carolina, New York and Georgia, filed Chapter 11 in this Court on October 1, 1984, seeking reorganization of their financial affairs. Thereafter, on April 29, 1985, Cook filed a motion seeking modification and/or rejection of 18 separate collective bargaining agreements with Local Unions Nos. 23, 37, 626, 880, 954, 1059 and 1099 of the United Food and Commercial Workers Union ("Union").

Section 1113 of the Bankruptcy Code (11 U.S.C. § 1113), entitled "Rejection of collective bargaining agreements," provides, in part:

(a) The Debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

Cook's motion for modification and/or rejection of its collective bargaining agreement followed the rejection by the Union's locals of a comprehensive package of concessions. Cook estimated that this package would save $4.1 million or $4.3 million, depending on whether 1984 or 1985 employee hours are used to compute savings. The requested concessions included: 10 percent wage reduction for all employees, provided no current employee shall be reduced to less than $4.50 per hour; reduction in the number of holidays; elimination of paid sick days and personal days; and sharp reductions in health and welfare benefits. Cook now seeks to reject or modify its existing collective bargaining agreement in order to implement the proposed changes which the Union rejected.

Both Cook and the Union have cited *In re American Provision Co.*, 44 B.R. 907 (Bankr.D.Minn.1984) in support of their positions. The bankruptcy court in that case outlined a nine-step analysis of the requirements for rejecting a collective bargaining agreement under Section 1113:

1. The debtor in possession must make a proposal to the Union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

5. The debtor must provide to the Union such relevant information as is necessary to evaluate the proposal.

6. Between the time of the making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the Union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The Union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.

*Id.* at 909. After careful consideration of the testimony and evidence introduced at hearing, this Court finds that Cook has failed to satisfy elements 3 and 9 of the *American Provision* test and, therefore, that its motion to modify and/or reject the collective bargaining agreements should be denied.

In analyzing whether proposed modifications were "necessary to permit the reorganization of the debtor," former Bankruptcy Judge Batchelder used the following standard: "The adoption of the modifications would result in a significantly greater probability of the debtor's successfully reorganizing, than would result if the debtor were required to continue under the collective bargaining agreement sought to be rejected." *In re Wright Airlines, Inc.*, No. 84-02493, slip op. at 4, (Bankr.N.D.Ohio, January 17, 1985).

The decision to seek concessions from the Union was made by Russell Hansen, president and chief executive operating officer of Cook. The amount of concessions was determined by an ad hoc committee composed of Hansen and three other officers of Cook. The anticipated savings of $4.3 million were then incorporated into Cook's operating plan for 1985. Without the anticipated labor savings, Cook's operating plan would still show a positive cash flow of $1.9 million. Though Cook argues in its post-trial brief that such a figure would be "disastrous in the context of Cook's financial history and current position," no further explanation is offered. This positive cash flow calls into question the "significantly greater probability" of a successful reorganization, since the wage

concessions do not appear essential to a positive cash flow.

Furthermore, Cook has decided to close and sell three stores, a move apparently not anticipated in its 1985 operating plan. These stores had aggregate labor costs of approximately $1.4 million per year. Though Cook's plan may have anticipated revenues from these stores during 1985, the total losses during the last fiscal year from these stores was $1.6 million. These changes call into question the supposedly ironclad figures of Cook's 1985 operating plan.

Finally, Cook's figures failed to account for savings from FICA and similar wage-related liabilities. Under the concession package, approximately $400,000 would be saved from these categories. Thus, the proposed concession package would save $4.7 million; obviously, this also impairs Cook's claim of necessity for wage concessions.

This Court finds that Cook has negotiated with Teamsters Local No. 20, which represents the truck drivers and warehousemen, and obtained concessions, but not to the degree requested of the Union. Seven personal days were eliminated, holidays were reduced to eight days, one week of vacation time was given up and wages were reduced by 10 percent (the average rate of pay for Teamsters employees is $9.56 per hour). However, the Teamsters did not give up any major medical coverage which Cook is requesting of the Union.

Even assuming that the wage and benefit concessions are "necessary," this Court finds that Cook has failed to meet the balancing of the equities test. This test is essentially adopted from the Supreme Court's decision in *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). "By the inclusion of the word 'clearly' in § 1113(c)(3), Congress intended to clarify that rejection was only appropriate where the equities balance decidedly in favor of rejection." *In re Salt Creek Freightways*, 47 B.R. 835, 12 B.C.D. 1113, 1116 (Bankr.D.Wyo.1985) (citation omitted). The balancing of the equities test requires:

... balancing the interests of the affected parties—the debtor, creditors, and employees. The Bankruptcy Court must consider the likelihood and consequences of liquidation for the debtor absent rejection, the reduced value of the creditors' claims that would follow from affirmance and the hardship that would impose on them, and the impact of rejection on the employees. In striking the balance, the Bankruptcy Court must consider not only the degree of hardship faced by each party, but also any qualitative difference between the types of hardship each may face.

104 S.Ct. at 1197.

The Court finds that the impact of rejection upon the employees is out of proportion to the hardship imposed upon the debtors, creditors and Teamsters Local No. 20 by affirmance of the collective bargaining agreement.

Initially; it should be noted that this opinion does not mean that the existing collective bargaining agreement cannot be changed. By denying Cook's motion, this opinion simply requires the debtor to bargain with the Union for any changes in the existing agreement, rather than imposing these changes by judicial decree. Employees of Cook, called as witnesses by the Union, almost uniformly agreed that some sort of concessions were justified; they were simply unwilling to grant as many concessions as Cook claimed were necessary.

The main method by which Cook sought to achieve labor cost savings was, by Russell Hansen's own testimony, to replace older and more senior full-time employees with younger part-time employees. This would give Cook greater flexibility in assigning work hours and reduce its pension costs, since most part-time employees would not receive the same pension benefits as full-time employees. While the need for lower labor costs is real, and Cook's business decision is completely justifiable, we cannot ignore the disproportionate bur-

den Cook's proposed modifications would place upon its more senior employees who are least able to find other employment.

The inequity in Cook's plan is further accented by the lack of any cuts in salary taken by Cook's upper management. Cook argues that it has substantially reduced its corporate burden and has shifted additional responsibilities onto the directors of Cook without raising their compensation. It cannot be denied, however, that Union members at least perceived that top management was not doing its fair share in taking cuts. If management feels its salary position is justified, this conflict with the Union is more appropriately resolved through collective bargaining than through judicial fiat.

Cook has simply failed to demonstrate that the adverse effects of a denial of its motion to reject or modify the collective bargaining agreement outweigh the adverse effects rejection will have upon Cook's employees. The motion must be denied.

It is, therefore, ORDERED, ADJUDGED and DECREED that Cook's motion for modification or rejection of collective bargaining agreements with Local Unions Nos. 23, 37, 626, 880, 954, 1059 and 1099 of the United Food and Commercial Workers Union is hereby denied.