**In re ORMET CORPORATION, a Delaware corporation, et al.[1], Debtors.**

**Nos. 04–51255 to 04–51261.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Nov. 1, 2004.

1. The Debtors are the following entities: Ormet Corporation, Ormet Primary Aluminum Corporation, Ormet Aluminum Mill Products Corporation, Specialty Blanks Holdings Corporation, Specialty Blanks, Inc., Formcast Development Inc. and Ormet Railroad Corporation.

Kim Martin Lewis, Donald W. Mallory, Dinsmore & Shohl, LLP, Cincinnati, OH, Adam C. Harris, Charles E. Bachman, O'Melveny & Myers LLP, New York City, for Debtors.

Mary Anne Wilsbacher, U.S. Trustee Office, Columbus, OH, for Assistant U.S. Trustee.

Robert G. Sable, Michael D. Seese, James E. Van Horn, McGuireWoods LLP, Pittsburgh, PA, Robert W. Crouch, Pittsburgh, PA, Nick V. Cavalieri, Timothy B. McGranor, Bailey Cavalieri LLC, Columbus, OH, for Official Committee of Unsecured Creditors.

*OPINION AND ORDER GRANTING RELIEF TO DEBTORS FROM COLLECTIVE BARGAINING AGREEMENTS PURSUANT TO 11 U.S.C. § 1113*

BARBARA J. SELLERS, Bankruptcy Judge.

## I. INTRODUCTION

This matter is before the Court on the conditional application of the debtors and debtors in possession ("Debtors") pursuant to 11 U.S.C. § 1113 for relief from their collective bargaining agreements with employees at the reduction plant and rolling mill in Hannibal, Ohio, in the event that consensual agreements cannot be reached. The United Steelworkers of America ("USWA"), the authorized representative of these employees, opposed the Debtors' application. The official committee of unsecured creditors ("Committee") filed a memorandum in support of the Debtors' application. Beginning on October 13, 2004, the Court conducted a three-day evidentiary hearing on the Debtors' application.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A).

## II. THE DEBTORS' PROPOSALS

The following are the principal terms and estimated cost savings of the Company's Section 1113 Proposals to the Local Nos. 5724 and 5760, as outlined in the Debtors' conditional application:

| Union | Principal Modifications Contained In Section 1113 Proposals | Average Annual Cost Savings |
|---|---|---|
| Local No. 5724 (Reduction Plant Employees) | • No change in wage rates;<br>• Offer Ormet Bonus Profit Sharing Plan, such that 8% of profits are distributed to employees' 401(k) plan and to eligible participants;<br>• Levelize vacations over 52 weeks; | • $9,400,000 |
| • approximately | • Modify vacation pay calculation from 44 to 40 hours; | |

| 900 employees | • Introduce monthly employee contributions to health insurance: $50 Single, $70 Double, $90 Family per month;<br>• Replace prescription drug plan with three-tier formulary plan;<br>• Implement employee option to elect cash payment up to $4,000/year in lieu of all benefits;<br>• Eliminate the two-year supplemental unemployment benefit program and medical related benefits during future layoff;<br>• Freeze existing defined benefit retirement plan and eliminate pension supplements;<br>• Implement new medical plan that provides future retirees with option to participate in an HMO or opt out of coverage in exchange for cash payment;<br>• Eliminate T-bid (temporary job bid) language;<br>• Reduce headcount by implementing manning changes and consolidating Reduction Plant and Rolling Mill storerooms; and<br>• Modify contracting out language to allow more flexibility in the use of contractors for various maintenance tasks. |
| --- | --- |

---

| Local No. 5760 (Rolling Mill)<br><br>• 495 Employees | • No change in wage rates;                • $5,200,000<br>• Offer Ormet Bonus Profit Sharing Plan, such that 8% of profits are distributed to employees' 401(k) plan and to eligible participants;<br>• Levelize vacations over 52 weeks;<br>• Modify vacation pay calculation from 44 to 40 hours;<br>• Modify overtime solicitation procedure;<br>• Eliminate Quarterly Achievement Bonus;<br>• Introduce monthly employee contributions to health insurance: $50 Single, $70 Double, $90 Family per month;<br>• Replace prescription drug plan with three-tier formulary plan;<br>• Implement employee option to elect cash payment up to $4,000/year in lieu of all benefits;<br>• Eliminate the two-year supplemental unemployment benefit program and medical related benefits during future layoffs;<br>• Freeze existing defined benefit retirement plan and eliminate pension supplements;<br>• Implement new medical plan that provides future retirees with option to participate in an HMO or opt out of coverage in exchange for cash payment;<br>• Reduce headcount by consolidating Reduction Plant and Rolling Mill storerooms; and<br>• Modify contracting out language—allow more flexibility in the use of contractors for various maintenance tasks. |
| --- | --- |

## III. *THE STATUTORY FRAMEWORK*

The statutory framework for the Debtors' request is set forth in 11 U.S.C. § 1113 as follows:

§ 1113. Rejection of collective bargaining agreements

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

(d)(1)Upon the filing of an application for rejection the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. All interested parties may appear and be heard at such hearing. Adequate notice shall be provided to such parties at least ten days before the date of such hearing. The court may extend the time for the commencement of such hearing for a period not exceeding seven days where the circumstances of the case, and the interests of justice require such extension, or for additional periods of time to which the trustee and representative agree.

(2) The court shall rule on such application for rejection within thirty days after the date of the commencement of the hearing. In the interests of justice, the court may extend such time for ruling for such additional period as the trustee and the employees' representative may agree to. If the court does not rule on such application within thirty days after the date of the commencement of the hearing, or within such additional time as the trustee and the employees' representative may agree to, the trustee may terminate or alter any provisions of the collective bargaining agreement pending the ruling of the court on such application.

(3) The court may enter such protective orders, consistent with the need of the authorized representative of the employee to evaluate the trustee's proposal and the application for rejection, as may be necessary to prevent disclosure of information provided to such representative where such disclosure could compromise the position of the debtor with respect to its competitors in the industry in which it is engaged.

(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be sched-

uled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

In considering a motion to reject a collective bargaining agreement under § 1113, several bankruptcy courts, including some in this circuit, have required a debtor in possession to establish the following elements:

1. the debtor-in-possession must make a proposal to the union to modify the collective bargaining agreement;

2. the proposal must be based on the most complete and reliable information available at the time of the proposal;

3. the proposed modifications must be necessary to accommodate the confirmation of a chapter 11 plan of reorganization;

4. the proposed modifications must assure that all creditors, the debtor and all affected parties are treated fairly and equitably;

5. the debtor must provide relevant information necessary to evaluate the proposal;

6. the debtor must meet at reasonable times with the union after making the proposal but before the time of the hearing on approval of the rejection of the existing collective bargaining agreement;

7. the debtor must confer with the union in good faith in an attempt to reach an agreement;

8. the union must have refused to accept the proposed modifications without good cause; and

9. the balance of the equities clearly must favor rejection of the collective bargaining agreement.

*See, e.g., In re American Provision Co.,* 44 B.R. 907 (Bankr.D.Minn.1984); *In re Amherst Sparkle Market, Inc.,* 75 B.R. 847, 849 (Bankr.N.D.Ohio 1987); *In re Blue Diamond Coal Co.,* 131 B.R. 633 (Bankr. E.D.Tenn.1991); and *In re Kentucky Truck Sales, Inc.,* 52 B.R. 797 (Bankr. W.D.Ky.1985). Although the Court has reviewed this nine-part test and believes each of the elements would be met here, the Court is not adopting such a test for its consideration. Rather, the Court will look to the statutory requirements set forth in § 1113(c).

## IV. APPLICATION OF § 1113 TO FACTS OF THIS CASE

The testimony and other evidence adduced at the hearing established that the Debtors made a proposal to the USWA, the authorized representative of the employees covered by the two collective bargaining agreements at issue, subsequent to filing their petitions for relief under chapter 11 and prior to filing an application seeking rejection of the collective bargaining agreements. Specifically, the date of filing for these chapter 11 cases was January 30, 2004. The Debtors delivered their proposals to the USWA on March 11, 2004, and did not file their conditional application for relief from the collective bargaining agreements until September 22, 2004.

The testimony and other evidence further established that the proposal was based on the most complete and reliable information available at that time. The proposal provides for modifications that the Debtors believe are necessary to permit their reorganization to go forward. These modifications, in conjunction with

the Debtors' plan of reorganization, assure that all creditors, the Debtors, and all of the affected parties are treated fairly and equitably. There was no real challenge either to the necessity of the modifications or to the equitable spread of these provisions among the employees and retirees of the two plants and the sacrifices to be made by the various other constituencies in these cases.

As evidenced by its October 5, 2004, counter-proposal, the USWA has a different approach to how it wishes to modify certain terms of any future collective bargaining agreements. The statutory tests, however, do not require the Court to impose such requests on the reorganization process. Indeed, there was substantial evidence that certain of the USWA's proposals, with their resulting financial impact, would not achieve the labor cost savings all parties agree are required.

The Court also must conclude that the USWA, as the authorized representative of the employees, has refused to accept the Debtors' proposals without just cause. Although the USWA denies such a charge and insists that it has insufficient information and wishes to bargain in good faith, the evidence establishes otherwise. The USWA's witnesses conceded that much of the information they sought was not needed to evaluate the Debtors' proposals, but to prepare their own counterproposal. Although the Court understands the USWA's concerns about the long-term viability of the Debtors and the absence of structural changes in the Debtors' proposals, the need for economic concessions in the amounts set forth is uncontested. It is also clear that the USWA rejected the Debtors' proposals early on, in a manner that at least appeared to discourage meaningful efforts at negotiations. *See* Exhibit JJ.

Finally, the Court determines from the evidence that the balance of the equities clearly favors rejection of the collective bargaining agreements. The USWA, as a member of the Committee, has known for many months that the terms of a plan of reorganization were being widely discussed. The resulting plan is consensual as to all major constituencies in this case except for the USWA. All of these constituencies will be sacrificing rights they held prepetition. The unsecured creditors, who will be the new shareholders of the reorganized companies, strongly support this § 1113 application. With the anticipated steep increase in electricity costs beginning in January 2005, the Debtors need to reduce all of their controllable costs of which labor costs are a significant factor. Every employee group is impacted and will share in these cost reductions. The Court regrets that the hourly employees may have to give up certain provisions that are important to their economic security. Some of the gains they have made in prior collective bargaining agreements, however, are no longer sustainable in the economic climate currently existing within the aluminum manufacturing industry. That reality has to be taken into account.

The Court finds that the Debtors have satisfied each of the tests required under § 1113(c) to reject the collective bargaining agreements in question. Therefore, it is unnecessary to decide the Debtors' alternative request for relief under § 1113(e).

### V. *CONCLUSION*

For all of the foregoing reasons, the Court GRANTS the Debtors' conditional application for relief from their collective bargaining agreements with Local Nos. 5724 and 5760 of the USWA.

**IT IS SO ORDERED.**