### In re ALLIED DELIVERY SYSTEM CO., Debtor.

**Bankruptcy No. B84–3167.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 21, 1985.

John R. Doll, Legothetis & Pence, Dayton, Ohio, for International Brotherhood of Teamsters.

Howard A. Levy, William E. Schonberg, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for debtor.

Bernard S. Goldfarb, Morris M. Reznick, Mark V. Webber, Cleveland, Ohio, for Central States, Southeast and Southwest.

### MEMORANDUM OF DECISION AND ORDER

ALICE M. BATCHELDER, Bankruptcy Judge.

This cause came on to be heard on the Motion of the Debtor for Authority to Reject A Collective Bargaining Agreement. On the evidence presented and the arguments of counsel for the debtor and for the union, the Court finds that the Motion is well taken and should be granted.

#### Factual Background

The debtor herein, Allied Delivery System Co., filed its Chapter 11 petition on December 24, 1984. On January 16, 1985, the debtor through counsel counsel sent a letter to Mr. Jackie Presser, President of

the International Teamsters Union, seeking relief from the terms of its collective bargaining agreement with Teamsters Local 407, and seeking the designation of a representative of the Union with whom the debtor could negotiate. The letter included the debtor's proposal for wage and benefit reductions as well as the most current financial statement available at that time, which was complete through November 30, 1984.

No response was received by the debtor or its counsel to the January 16, 1985, letter, and on January 24, 1985, a second letter was sent, requesting a response to the previous one. By letter dated January 25, 1985, the union responded through its counsel, designating a representative of the union who was authorized to negotiate with the debtor.

A meeting was held on February 6, 1985, at which time the parties attempted to schedule another meeting. Due to scheduling conflicts on both sides, no meeting could be arranged before February 18, 1985.

On February 7, 1985, the debtor filed its motion for authority to reject the collective bargaining agreement, which was scheduled for hearing on February 19, 1985, pursuant to the requirements of 11 U.S.C. § 1113(c)(3). Negotiations proceeded at the scheduled February 18, 1985, meeting, and no agreement was reached. The union at that time refused to accept a subsequent proposal made by the debtor in response to a proposal which had been put forth by the union.

At the hearing on the 19th of February, the parties represented that several additional bargaining sessions were scheduled, and that they intended to continue their efforts to reach a new agreement. However, it appears that these efforts have been fruitless.

Although there exists some confusion in the record as to what percentages of current union wages and benefits the debtor's respective proposed cutbacks constitute, the parties are in agreement that the union's cutbacks are a higher percentage of current wages and benefits than those already imposed upon non-union employees. The union challenges the necessity and fairness of the wage and benefit cutbacks proposed by the union, the good faith of the debtor in negotiation, and contends that the union's refusal to accept the company's proposal was for good cause.

## OPINION

A determination of the right of the debtor to reject this collective bargaining agreement requires consideration of a number of issues, which may be stated as follows: 1) Has the debtor met the requirements of 11 U.S.C. § 1113(b) by presenting to the union, prior to the filing of its Motion For Authority to Reject the Collective Bargaining Agreement, a proposal "... based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employee's benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably;" and by providing to the union such "relevant information as is necessary to evaluate the proposal." 2) Has the debtor during the requisite period engaged in good faith negotiation with the union? 3) Has the debtor made a proposal to the union prior to the hearing on the motion for authority to reject which meets the requirements of § 1113(b)(1)(A), which proposal the union has refused without good cause to accept, and, under those circumstances, does the balance of the equities favor rejection of the collective bargaining agreement?

There is no dispute between the debtor herein and the teamsters local as to the presentation by the debtor of a proposal prior to the filing of the debtor's motion to reject the collective bargaining agreement. The union does dispute that the original proposal of the debtor contains modifications which meet the requirements of § 1113(b)(1)(A). The union also disputes that it was provided with all of the relevant

financial information necessary to evaluate the debtor's proposal.

The question of whether the modifications contained in the debtor's original proposal are "necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor ..." raises an interesting problem which is closely intertwined with the good faith bargaining requirement, and requires an examination of the meaning of the term "necessary." The legislative history of § 1113 reveals that the language actually contained in § 1113(b)(1)(A) is not that which was originally proposed by the House of Representatives, which would have required a finding by the Bankruptcy Court that, absent rejection, the efforts that reorganization "will fail" and the jobs covered by the union contract "will be lost." H.R. 5174, 98th Cong., 2d Sess. Sec. 277(a) (1984). It is also important to note that another subsection of § 1113, namely § 1113(e) dealing with interim relief from the provisions of the collective bargaining agreement, requires that the debtor show that the requested relief is "essential to the continuation of the debtor's business" or is needed "to avoid irreparable damage to the estate ..." Clearly Congress knew how to set out a stringent test. However, the statute as enacted only requires "necessary" modifications, "necessary to permit the reorganization ..."

This Court finds that in the context of this statute "necessary" must be read as a term of lesser degree than "essential." To find otherwise, would be to render the subsequent requirement of good faith negotiation, which the statute requires must take place after the making of the original proposal and prior to the date of the hearing, meaningless, since the debtor would thereby be subject to a finding that any substantial lessening of the demands made in the original proposal proves that the original proposal's modifications were not "necessary." In this case, the original proposal addressed a deteriorating financial situation in which the debtor's union labor costs constituted 87% of gross revenues as of the time the proposal was made, leaving only 13% of revenues to absorb all other costs, including fuel. The testimony established that when current pension and health and welfare benefits are added to those labor costs, that figure as a percent of gross revenues may exceed 100%. Other testimony of the Debtor, uncontroverted by the Union, established that the debtor has lost a considerable amount of business and that its revenues are declining.

Under the circumstances presented in this case, this Court finds that the original proposal of the debtor was for necessary modifications in the employees' benefits and protection necessary to permit the reorganization of the debtor. Clearly the modifications proposed by the debtor would have substantially reduced the debtor's labor costs, and such a cost reduction is absolutely required if this debtor is to reorganize.

The Court further finds that the original proposal of the debtor was fair and equitable within the meaning of § 1113(b)(1)(A). The union's contention that the proposal is unjust because it would impose a higher percentage cut on the union employees than on non-union employees has a surface appeal. However, when somewhere between 87 and 100% of the debtor's gross revenues are required to pay the union labor costs, the union labor is of necessity going to feel the bite the most acutely. It is difficult to avoid drawing the inference from the testimony and argument presented by the union that it is the union's position that if union employees are to suffer a 20% cut then all other employees must likewise suffer a 20% cut. This Court does not find that the requirement of § 1113(b)(1)(A) that the proposal of the debtor treat all creditors, the debtor and all of the affected parties fairly and equitably requires such a result. The evidence clearly demonstrated that the wages of all non-union employees were reduced on a graduated scale based on earnings, and that the earnings and benefits of most of the non-union employees did not equal in value those of the union employees. In particular, the non-union employees have no pen-

sion plan. Fair and equitable treatment does not of necessity mean identical or equal treatment.

The union also challenges the compliance of the debtor with § 1113(b)(1)(B), which requires that the debtor provide the union with such relevant information as is necessary to evaluate the proposal. It is the finding of this Court that once the debtor has produced evidence that it provided information to the union, the burden is on the union to demonstrate that that information was not sufficient, for whatever reason. The union herein has not met this burden. The union has made no showing of why the previous financial statements, covering a period of two (2) and three (3) years prior to the filing of the Chapter 11 petition, were necessary to evaluate the proposal. The statutory requirement is that the information provided be such "relevant information as is necessary to evaluate the proposal." The proposal is one for modifications necessary to permit the debtor's reorganization. This Court finds that in the absence of the union's showing of a need for specific information beyond the current financial information provided by the debtor, the debtor has complied with this requirement.

The second major issue presented by this Motion for Authority to Reject a Collective Bargaining Agreement is the issue of whether the parties engaged during the requisite period in good faith negotiations. Despite the obvious rancor existing between the union and the debtor, it is clear that negotiations have been held, and that the reason more sessions were not held between the time of the making of the debtor's proposal and the hearing on the Motion to Reject was mutual scheduling difficulties. Neither the debtor nor the union will be penalized for that. It is also clear that the debtor did, during the course of these negotiations, make reductions in its demands to the union. This Court finds that the requirement of good faith negotiation has in fact been complied with.

Finally, this Court must determine whether the debtor has made a proposal which satisfies the requirements of § 1113(b)(1)(A), which has been refused by the union without good cause, and whether, under those circumstances, the balancing of the equities favors rejection of the collective bargaining agreement. The proposal which § 1113(c) refers to is not the original proposal made by the debtor. Section 1113(c) refers merely to a proposal made "prior to the hearing ...", which, in this case, is the debtor's counterproposal, presented after the union made its own proposal.

The union contends that the dollars which the debtor's counterproposal seeks to save are in excess of the debtor's 1984 losses, and that the union is being asked to bear all of the cost savings. This contention ignores the fact that the revenues of the debtor are projected to be approximately One Million Dollars ($1,000,000.00) less for 1985 than for 1984. The impact of the cost savings which can be realized from further cutting the non-union employees would be minute and the fact that the company does not propose to make such further cuts does not render this proposal either unfair or inequitable. That the cuts in cost which would result from the adoption of the debtor's counterproposal are necessary to a reorganization of this company is abundantly clear from the financial data presented through the testimony and exhibits. The debtor suffered significant losses ($287,000.00) in 1984 and is facing a twenty percent (20%) reduction in revenues for 1985. The Court does note that there was some confusion in the testimony as to whether the total savings to the debtor for the union and non-union employee cost reductions following the counterproposal will be Two Hundred Ninety-Six Thousand Dollars ($296,000.00) or Three Hundred Eighty-Eight Thousand Dollars ($388,-000.00). The Court finds, however, that even at the higher figure the projected decrease in revenues for 1985, coupled with the enormous percentage of gross revenues required for union labor costs, necessitates the cuts contained in debtor's counterproposal. Thus, the Court finds that the counterproposal of the debtor meets the

requirements of § 1113(b)(1)(A), as required by § 1113(c).

The Court finds further that the union's refusal to accept the proposal, while understandable, is not for good cause. If the proposal is necessary and is fair and equitable, which this Court finds that it is, then the union's refusal to accept it on the basis that the proposal is unjust, as the union representative has testified, is not for good cause.

Thus, the final question is whether the balancing of the equities in this matter favors rejection of the collective bargaining agreement. The evidence herein clearly demonstrated that the financial drain on this debtor is enormous. The cutting of labor costs is essential. There has been no showing of any other area in which substantial savings could be realized by the debtor. Furthermore, the testimony established that the cost of living increase which will become effective pursuant to the collective bargaining agreement on April 1, 1985, applies to this debtor, even though the collective bargaining agreement itself expires on March 31, 1985. The union has cited to the Court the case *In re American Provision Co.*, 44 B.R. 907 (Bankr.D.Minn. 1984), as standing for the proposition that where the collective bargaining agreement expires within a short time after the motion to reject is heard, the motion should be denied because the parties will be in a required bargaining position at that time in any event.

*American Provision* is readily distinguishable from this case, since it dealt with union employees as to whom the combined cost savings to the debtor each month was approximately two percent (2%) of the debtor's monthly expenses. In addition, there is no mention in *American Provision* of any scheduled cost of living increase or its effect on the debtor. In the case at bar, the parties appear to be in agreement that the debtor will be bound by the cost of living increase, even though the contract expires; furthermore, the union was unable to offer any assurances that a new agreement between the union and the debtor or could be speedily reached once the existing contract does expire. Indeed, the clear import of the testimony is that such an agreement might well be a long time in coming. The debtor herein is in no position to continue to pay salaries and benefits at the current level, much less to be subject to a cost-of-living increase.

This Court therefore finds that the balancing of the equities clearly favors rejection of the collective bargaining agreement.