**In re AIR FLORIDA SYSTEM, INC., Debtor.**

**In re AIR FLORIDA, INC., Debtor.**

**AIR FLORIDA PILOTS ASSOCIATION, Plaintiff,**

v.

**AIR FLORIDA, INC., Defendant,**

**and**

**Midway Airlines, Inc., and the Unsecured Creditors' Committee of Air Florida, Inc., Intervening Defendants.**

**Bankruptcy No. 84–01223–BKC–SMW. Adv. No. 84–0649–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

April 5, 1985.

John K. Olson, Tampa, Fla., for Air Florida.

Stanley C. Wisniewski, Connerton, Bernstein & Katz, Washington, D.C., for Air Florida Pilots Ass'n.

Robert A. Schatzman, Schatzman & Schatzman, P.A., Coral Gables, Fla., for Creditors' Committee.

Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for Midway.

## ORDER DENYING INJUNCTIVE RELIEF

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on to be heard on April 1, 1985, at a final evidentiary hearing on the request of Air Florida Pilots' Association ("AFPA") for entry of an injunction against Air Florida, Inc. ("Air Florida"). The court conducted at least three hearings in this case, took substantial evidence, heard the statements and arguments of counsel, is fully advised in the premises, and hereby makes the following findings of fact and conclusions of law.

Air Florida is a certificated air carrier which, until the filing of its petition, was engaged in scheduled and charter air transportation of passengers, property and mail. Air Florida and its parent corporation, Air Florida System, Inc. ("AFSI") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code on July 3, 1984. The cases have been procedurally consolidated.

As of July 3, 1984, Air Florida was the eighteenth largest certificated air carrier in the United States, serving Florida and cities in the Northeast and Midwest United States, Central America, the Caribbean region and Europe. Air Florida has not conducted flight operations since July 3, 1984, except as noted below. Rather, on that date, Air Florida shut down its operations, grounded its planes, and terminated its employees.

Certain of Air Florida's employees are members of AFPA. Other labor unions represent the majority of Air Florida's other employees.

On or about February 1, 1982, Air Florida and AFPA entered into a collective bargaining agreement which set forth the economic and non-economic conditions under which AFPA members would be employed by Air Florida. The collective bargaining agreement was interpreted and amended by the parties by means of various letters of agreement. The collective bargaining agreement and the various letters of agreement are collectively referred to herein as the "Basic Agreement" or the "Contract."

Upon the filing of its Chapter 11 petition, Air Florida notified AFPA by letter dated July 9, 1984, that the Contract had been suspended by operation of law. Shortly thereafter, the parties negotiated a short term Interim Agreement, executed by both AFPA and Air Florida on July 12, 1984. The Interim Agreement, had it become effective, would have modified the Contract in several respects, and provided that those elements of the Contract not expressly modified by the Interim Agreement would remain unchanged for the duration of the Interim Agreement.

The Interim Agreement would have become effective on July 12, 1984, had it been approved by this court. It would have expired on October 1, 1984, had it ever been in effect. The Interim Agreement recited that Air Florida and AFPA had agreed to negotiate toward the confirmation and assumption of the Contract, and to seek court approval of such assumption and of the Interim Agreement itself.

Neither Air Florida nor AFPA took any action in the bankruptcy court to approve the Interim Agreement or the Contract during the term of the Interim Agreement.

Subsequent to the negotiation of the Interim Agreement, Midway Airlines, Inc. ("Midway") entered into negotiations with Air Florida for the purchase of substantially all of Air Florida's assets. From the outset of these negotiations, Midway contemplated a temporary revival of Air Florida's operations as Air Florida, d/b/a Midway Express, pending actual consummation of the purchase.

The Midway negotiations culminated in this court's approval on September 26, 1984 of a series of agreements between Midway, AFSI and Air Florida: a Master Agreement, a Loan and Security Agreement, and a Service Agreement. This court found, *inter alia*, that the Midway transaction represented the best and only hope that Air Florida's creditors would realize any payment on their claims, there being no other serious prospective purchasers and no other operating plan. The court further found that sound business reasons existed to compel the speedy approval of the Midway transaction. AFPA appeared and was heard by the court in this matter, and did not challenge the court's approval of the transaction. This court's order was affirmed and adopted by the district court on November 27, 1984. This court takes judicial notice of its own findings of fact, conclusions of law and order, and of the district court's order.

The Master Agreement provided that a condition to closing would be that Air Florida employees would continue to work under terms and conditions compatible with Midway's own employment practices. Midway had legitimate business reasons for insisting on this condition, inasmuch as it would have been unfair and prejudicial to Midway's own employees if Air Florida used Midway money to pay Air Florida employees more than Midway's own employees.

On October 5, 1984 (five days after the date the Interim Agreement would have expired had it been in effect, and after the bankruptcy court approved the Midway transaction), Air Florida served written notice on AFPA that it rejected its collective bargaining agreements. Air Florida resumed operations as Midway Express under the Service Agreement on October 15, 1984, implementing the terms of its contract proposal to AFPA of September 25. AFPA responded by filing the instant com-

plaint for injunctive relief and declaratory judgment, and now seeks injunctive relief against Air Florida from unilaterally altering any of the Contract's provisions without following the procedures of the Railway Labor Act. Both Midway Airlines, Inc. and the Unsecured Creditors' Committee of Air Florida, Inc., were allowed to intervene as parties defendant.

This court, recognizing that labor harmony is both difficult to impose by judicial order and necessary (or at the very least extraordinarily helpful) in the reorganization process, attempted to resolve the disputes between Air Florida and its pilots by encouraging settlement. On at least three separate occasions, the court continued hearings on various motions in this adversary proceeding and directed the parties back to the bargaining table. To their credit, the parties did bargain, including multiple sessions conducted with the assistance of the National Mediation Board. Based upon all of the facts before it, the court is satisfied that the parties bargained in good faith. Unfortunately, the mediation technique and the bargaining process have proven futile and the court now must direct its attention to the issues before it.

As a preliminary matter, the court notes that it has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

In order to be entitled to injunctive relief AFPA must prove the following elements: (1) probability of success on the merits of its complaint; (2) immediate irreparable injury for which there is no adequate remedy at law; (3) AFPA and its members would suffer greater hardship in the absence of an injunction than other parties in interest would suffer if an injunction were granted, and (4) AFPA and its members would suffer greater hardship in the absence of an injunction than the public would suffer if an injunction were granted. AFPA has not met its burden of proof.

The Contract was first executed on February 1, 1982 and was due to expire, absent Air Florida's Chapter 11 petition, on May 1, 1985. As such, the Contract is an "exec-utory contract" within the meaning of Section 365 of the Bankruptcy Code.

The filing of Air Florida's Chapter 11 petition had the effect of suspending the enforceability of the Contract, which could not become enforceable again unless and until formal assumption by Air Florida, in accordance with Section 365 of the Bankruptcy Code. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). *Bildisco* represents the controlling authority concerning this adversary proceeding inasmuch as Air Florida's Chapter 11 proceeding is not governed by the 1984 amendment to the Bankruptcy Code concerning executory collective bargaining agreements. See Section 541(c), Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353).

■ Nothing in the Bankruptcy Code precludes Air Florida from modifying or rejecting the Contract. Section 1167 of the Bankruptcy Code does not apply to this proceeding. Section 1167, which provides that collective bargaining agreements subject to the Railway Labor Act must be modified in accordance with Section 6 of such Act, applies only to railroad reorganization proceedings. *See* 11 U.S.C. Section 103(g). The Bankruptcy Code expressly defines "railroad" as a "common carrier by railroad...." Air Florida is manifestly not a railroad, and is therefore not subject to Section 1167. *See In re Braniff Airways, Inc.*, 25 B.R. 216 (Bkrtcy.N.D.Tex.1982); *In Re Airlift International, Inc.*, 16 B.R. 639 (Bkrtcy.S.D.Fla.1981) (amended order denying motion to dismiss).

■ The court is not persuaded that the Interim Agreement operated to assume the Contract within the meaning of Section 365 of the Bankruptcy Code. First, the Interim Agreement's effectiveness was subject to court approval, which was neither sought nor obtained. Second, the Interim Agreement was never performed during its stated duration. Thus, at the moment, the only agreement which could be the subject of an injunction is the Contract.

Nothing in the Interim Agreement or in the parties' conduct operated to expressly or tacitly assume the Contract. AFPA argues that the Contract was assumed by virtue of the fact that it was referred to in the Interim Agreement as remaining in effect (except as modified by the Interim Agreement) until the Interim Agreement's stated expiration date. The Interim Agreement also provided, however, that the Contract would be renegotiated and revised by the parties. The court concludes that there was no assumption of the Contract, and that even if the Interim Agreement had become effective and had operated to somehow assume the Contract, that agreement would have expired by its own terms on October 1, 1984.

AFPA also argues that court approval is not required in order to assume an executory collective bargaining agreement, asserting that such an act is within Air Florida's "ordinary course of business." The court disagrees, particularly in the context of an air carrier that did not operate during the period in which AFPA claims the Contract to have been assumed.

■ Air Florida need not have exhausted any of the procedures described in Section 6 of the Railway Labor Act prior to modifying or rejecting the Contract. The only procedures that Air Florida must follow are set forth in *Bildisco, supra.* It follows that, since Air Florida has not assumed the Contract, and has served its notice of rejection thereof, the Contract remains unenforceable. AFPA's argument that Section 6 of the Railway Labor Act applies to any modification of the Contract is without merit. A collective bargaining agreement between a union and an air carrier that, absent bankruptcy, is generally subject to the Railway Labor Act is not operatively distinguishable from a collective bargaining agreement that is subject to the National Labor Relations Act. *See Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2d Cir.1975), and *Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d 164 (2d Cir.), *cert. denied* 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975), *overruled on other grounds NLRB v. Bildisco & Bildisco, supra.*

■ Under the applicable *Bildisco* standards, Air Florida may reject the Contract if it has bargained in good faith with AFPA. "Good faith" is a flexible concept. Under the terms of the September 1984 agreements between Air Florida and Midway, Midway is not obligated to close its acquisition of Air Florida's assets if Air Florida's then-existing labor arrangements are not satisfactory to Midway. It is not surprising, then, that Midway had substantial input into Air Florida's bargaining posture during its ultimately failed negotiations with AFPA for a new contract. It is likewise not surprising that Midway made clear, to Air Florida, AFPA and the court, that terms and conditions of employment of AFPA members more favorable than those accorded to newly-hired Midway pilots would not be satisfactory to Midway within the meaning of the September 1984 agreements. Recognizing these constraints, the court is nonetheless satisfied that Air Florida has bargained in good faith with AFPA. AFPA's members must recognize, and this court must emphasize, the utterly insolvent position of Air Florida when its bankruptcy petition was filed. The position of AFPA's members, and of all of Air Florida's employees, was remarkably tenuous; but for the Midway transaction, it is unlikely that any of Air Florida's employees would now be employed by Air Florida. In this context, AFPA's members cannot reasonably expect to be compensated greater than, or to enjoy seniority status senior to, newly-hired Midway pilots.

The court notes that Midway and Air Florida made clear at the final hearing on April 1, 1985, that the final offer made to AFPA would remain open on the same terms and conditions for 45 days.

If the court were to grant the requested relief to AFPA, and also to deny Air Florida's companion motion to reject the executory contract with AFPA, the consequences to Air Florida, its employees and its creditors would be severe. The court is

satisfied that the result of such action would be the failure of Midway to close its acquisition of Air Florida's assets, loss of employment by all Air Florida employees and probably failure of the Air Florida reorganization efforts. There is a suggestion in the record that some AFPA members believe that they have been called upon to sacrifice as to rates of pay disproportionately as compared to other Air Florida employees, and that the loss of everyone's job would be "fair." Such a result may be fair, in the sense of evenhanded, but it is not just. As a court of equity, this court will not sanction such a result. The requested injunctive relief will be denied.

Because of this disposition of the case, the court will not consider the issue of the amount of bond which AFPA would be required to post if an injunction were to be granted.

A separate final judgment will be entered.