In re WILLIAM P. BROGNA AND
COMPANY, INC., Debtor.

Bankruptcy No. 86-00733 T.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 29, 1986.

Robert Szwajkos, Rubin, Quinn & Moss, Philadelphia, Pa., for debtor.

Thomas E. Seus, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for Plumbers Union Local 690.

Bruce E. Endy, Spear, Wilderman, Sigmond, Borish, Endy and Silverstein, Philadelphia, Pa., for Steamfitters Local Union # 420.

OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The debtor has filed Applications for Withdrawal from the Mechanical Contractors Association of Eastern Pennsylvania, Inc. (MCA) and Rejection of Collective Bargaining Agreements with both Local Union 420 of the United Association of Journeymen and Apprentices of the Plumbing and

Pipe-Fitting Industries of the United States and Canada (Local 420) and Plumbers Union Local 690 (Local 690).[1] This Court held two hearings pursuant to notice required by 11 U.S.C. § 1113.

The debtor, William P. Brogna and Company, Inc. commenced the above-captioned Chapter 11 case by filing a voluntary petition on February 14, 1986. Since that date, the debtor has remained in possession.

We will proceed to review and discuss the debtor's various Applications, setting forth our reasons for denying and dismissing them.

## I. WHETHER THE DEBTOR HAS VALIDLY WITHDRAWN FROM THE MCA AGREEMENT

The debtor has been, at all times relevant hereto, a member of the Mechanical Contractors Association of Eastern Pennsylvania, Inc. (MCA), a multi-employer bargaining association whose function it is to negotiate collective bargaining agreement on behalf of member employers.[2]

At the time the debtor filed its Chapter 11 Petition, it was bound (as an MCA member) to the then current MCA/union collective bargaining agreement that provided for an expiration date of April 30, 1986 (Ex. 420–3). On March 21, 1986 the debtor notified the unions herein of its intention to withdraw from the MCA and its desire to negotiate its own collective bargaining agreement (Debtor's Ex. "C"). In response thereto, both the MCA and the unions notified the debtor that negotiations for a new contract had already commenced and its attempted withdrawal was untimely and ineffective (Ex. 420–1, Ex. "F"). In addition, the unions contend that the debtor had not complied with the minimum 120–day period within which such withdrawal notices must be sent, according to the existing MCA Agreement. See, *N.L.R.B. v. Charles D. Bonanno Linen Service, Inc.,*

630 F.2d 25 (1st Cir.1980); *Retail Associates, Inc.,* 120 N.L.R.B. 388 (1958).

We agree with the arguments offered by the unions and consequently we find and conclude that the debtor is bound to the terms and conditions of the new MCA Agreement (Ex. 420–2, 420–3), unless the debtor has met the requirements mandated by 11 U.S.C. § 1113. We turn, then, to a consideration of the second (and in our view, the principal) issue raised by the debtor.

## II. WHETHER THE DEBTOR IS ENTITLED TO REJECT THE CURRENT COLLECTIVE BARGAINING AGREEMENTS WITH UNION LOCALS 420 AND 690

The starting point for our inquiry is section 1113 itself, which sets forth the mandatory procedural steps and substantive standard by which any such attempted rejection must be considered. Furthermore, we have the duty of applying that section to the facts of this proceeding, as it has been interpreted by the recent, binding precedent of *Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of America,* 791 F.2d 1074 (3rd Cir.1986).

The Court in *Wheeling-Pittsburgh* found that there is no requirement in the statute that the bankruptcy court make a preliminary determination regarding the necessity of any changes in the collective bargaining agreement before the debtor's proposal must be made or evaluated. 791 F.2d at 1085. Rather, Judge Sloviter stated that the bankruptcy court must apply the two-pronged test of Section 1113(b)(1) to determine whether the debtor's proposal "provides for those necessary modifications in the employees' benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected

---

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. Approximately six other MCA members compete directly with the debtor for business in the

Allentown/Lehigh Valley area. Furthermore, more than two dozen union contractors come into that geographic area to bid in competition with the debtor. (Court Exhibit No. 1, Ex. 420–4, 420–5, 420–6; N.T. July 15, 1986 at 57–59)

parties are treated fairly and equitably." 791 F.2d at 1086.

The Court proceeded to interpret the word "necessary" in Section 1113(b)(1)(A) as synonymous with the term "essential" and concluded its analysis of that statutory language by determining that the available legislative history "placed the emphasis in determining whether and what modifications should be made to a negotiated collective bargaining agreement on the somewhat shorter term goal of preventing the debtor's liquidation." 791 F.2d at 1089. In addition the Court noted that the requirement that any such proposal provide only for "necessary" modifications in the collective bargaining agreement is conjunctive with the requirement that the proposal treat "all of the affected parties ... fairly and equitably." 791 F.2d at 1089.

■ Thus we are bound to apply the applicable provisions to the facts of this proceeding in the precise manner enunciated in the *Wheeling-Pittsburgh* decision, supra. In other words, the debtor here can reject these union contracts only if it has established: (1) that its proposal contains only those modifications necessary to prevent the debtor's liquidation; *and* (2) that its proposal treats all of the affected parties ... fairly and equitably.

A review of this debtor's proposal, as well as the pleadings, the record of two hearings, and a consideration of the briefs of all parties leads us to the clear conclusion that debtor has not satisfied either portion of the required two-pronged test.

A. The "Necessity" Prong:

■ The debtor's proposal contains numerous provisions which are non-economic in nature and which we find and conclude are not necessary to prevent the liquidation of the debtor. In comparing Debtor's Ex. "H" with Ex. 690–1, we note that many of the debtor's proposed changes have no direct impact on its labor costs and would have no direct bearing on its ability to prevent liquidation. For instance, the debtor proposes changes in the grievance procedure, union security and apprentice ratios.

Furthermore, we find that debtor has presented no persuasive evidence to justify a 41% reduction in wages and 38% cut in fringe benefits for union employees, in order to avoid liquidation. In addition, we find that debtor's realistic competition (presently and for the foreseeable future) consists of other union contractors, although some non-union competition exists.

Therefore, we hold that the debtor has not satisfied the first-prong of the two-pronged statutory test and, on that basis alone, the debtor's Applications to reject these labor contracts must be denied.

B. The "Fair and Equitable" Prong:

Assuming arguendo, that the debtor's proposal is deemed to have satisfied the "necessity" prong of the statutory standard, we note again that the two-pronged test is conjunctive and the debtor has failed to establish that its proposal treats all affected parties fairly and equitably. To the contrary, we find and conclude that the proposal in question exacts more of an economic tribute from employees of both unions than from the debtor and from other creditors of the debtor.

■ First of all, the debtor has proposed to pay all creditors 100% of their claims within three (3) years after confirmation. However, its proposal does not contain any type of "snap-back" clause or other provision which would inure to the benefit of union employees to compensate fairly and equitably over time for the present cut in wages (41%) and fringe benefits (38%) contained in the debtor's proposal.

Secondly, Mr. Funari, the president of the debtor offered contradictory testimony concerning the alleged intention of various family members, employed by the Debtor to accept a reduction in compensation. At the initial hearing, Mr. Funari said little about any such considerations. During the second hearing, however, Mr. Funari attempted to modify his previous testimony by offering, on behalf of himself and family employees, to take cuts in compensation without specific terms sufficiently delineated.

In our view, Mr. Funari's "second presentation" on this issue was an understandable attempt to remedy a fatal flaw in the debtor's case as the record stood at the conclusion of the first hearing. However, even if we accept Mr. Funari's later testimony as credible, the debtor has failed to correct that fatal flaw in precise enough terms to meet the "fair and equitable" test.

Consequently, we conclude that the debtor has not met the second prong of the statutory test with the result that its Applications must be denied.

### III. THE NINE–STEP ANALYSIS:

The Court in *Wheeling-Pittsburgh*, supra, stated that the bankruptcy court had analyzed the debtor's application for rejection under section 1113 according to a nine-step process first enunciated in *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr.D.Minn.1984), and followed by other bankruptcy courts. 791 F.2d at 1080–81. Although the Third Circuit Court of Appeals devoted most of its opinion to the two-pronged conjunctive test of the statute ("necessary" and "fair and equitable"), we now, for the sake of completeness, apply that nine-point process to the facts of this case and find as follows:

(1) the debtor did submit a proposal for modification; (2) the debtor did meet or attempt to meet with union representatives; (3) the debtor did not negotiate with the unions in good faith because its proposal contained many unnecessary and non-economic modifications and debtor's president assumed it would be rejected by the unions; (4) the debtor's proposal was based on the most complete and reliable information available; (5) many of the debtor's proposed modifications were not necessary for reorganization; (6) all parties were not treated "fairly and equitably" because the union employees were asked to accept economic reductions far greater than the debtor and creditors; (7) the debtor gave the unions sufficient information to evaluate the proposal; (8) the unions refused to accept the debtor's proposal with good cause;

(9) the balance of equities does not clearly favor rejection of the Agreements.

### IV. WHETHER THE PROCEDURAL TEST OF SECTION 1113 WAS SATISFIED

In the concluding portion of the *Wheeling-Pittsburgh* decision, the Court noted that Section 1113 imposes on a debtor certain procedures attendant to any proposal to modify a labor contract. 791 F.2d at 1093. Thus the debtor in this proceeding must have provided the union representatives with such relevant information as is necessary to evaluate the proposal (11 U.S.C. § 1113(b)(1)(B)), and to meet to confer in good faith in attempting to reach mutually satisfactory modifications 11 U.S.C. § 1113(b)(2).

In light of our foregoing findings and conclusions which have resulted in our holding that the debtor has failed to satisfy either part of the two-pronged test of *Wheeling-Pittsburgh*, supra, we will assume that this debtor has satisfied the procedural test set forth above.

### V. CONCLUSION

In light of the foregoing analysis, we find pursuant to 11 U.S.C. § 1113(c) that—

(1) the debtor has not prior to the hearing made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representatives of the employees of Union Locals 420 and 690 have refused to accept such proposal with good cause;

(3) the balance of the equities does not clearly favor rejection of such agreements.

Therefore, we deny and dismiss the debtor's present Applications.