**In re MILE HI METAL SYSTEMS, INC., Debtor.**

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL NO. 9, Appellant,**

v.

**MILE HI METAL SYSTEMS, INC., Appellee.**

**Bankruptcy Case No. 85 B 1850 C. Civ. A. No. 85–M–2133.**

United States District Court, D. Colorado.

Nov. 13, 1986.

Walter Brauer, Brauer & Buescher, P.C., Denver, Colo., for appellant.

Robert M. Duitch, Colorado Springs, Colo., for debtor/appellee.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an appeal from a bankruptcy judge's order approving an application for rejection of a collective bargaining agreement pursuant to 11 U.S.C. § 1113 (1984). 51 B.R. 509. Mile Hi Metal Systems, Inc. ("Mile Hi") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on April 12, 1985. The statement of financial affairs, filed on April 29, 1985, indicates that this corporation began business in May, 1980 as a heating, ventilation and air conditioning subcontractor. The only shareholders in the corporation are Kim Hansen and Gene Zwart, who are also officers, and are active in the daily management of the affairs of the business. Mile Hi has been a union contractor with its workers represented by Sheet Metal Workers' International Association, Local No. 9 ("Union"), the appellant.

On April 22, 1985, the bankruptcy judge granted the debtor emergency relief from its obligation to pay contributions for all employee benefit funds, except vacation, under the existing collective bargaining agreement. That order was entered pursuant to 11 U.S.C. § 1113(e), and is not a part of this appeal.

The subject application, designated Debtor's Motion To Reject Collective Bargaining Agreement, was filed June 10, 1985. Attached to the motion was a copy of a letter addressed to the Union, dated May 29, 1985, setting forth the debtor's proposal for modification of the collective bargaining agreement. The bankruptcy judge held a hearing on June 21, 1985. At the conclusion of the hearing, the bankruptcy judge granted a continuance to permit the parties to engage in bargaining. The hearing resumed on June 28, 1985. At the conclusion of the hearing, the bankruptcy judge made oral findings of fact and conclusions of law on the basis of which the judge indicated that the rejection would be permitted, but did not then decide whether the rejection should be retroactive. On July 20, 1985, the bankruptcy judge entered a written order permitting the rejection as of June 28, 1985. That order included written findings and conclusions which are substantially the same as the oral findings and conclusions made at the conclusion of the June 28, 1985 hearing.

In reviewing this decision, this court has the benefit of the carefully constructed interpretation of the requirements of 11 U.S.C. § 1113(b) in the opinion from the United States Court of Appeals, Third Circuit, deciding *Wheeling-Pittsburgh Steel Corporation v. United Steelworkers of America,* 791 F.2d 1074 (3rd Cir.1986). That decision was not available to the parties and the bankruptcy judge at the time of the subject order. In that case, the appellate court analyzed the legislative history of this statute and emphasized that the focus for the ultimate issue on an application for rejection is whether the debtor's proposal meets the substantive standards set forth in section 1113(b)(1). Those are as follows:

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

Here, the bankruptcy judge decided that the proposal met these requirements on rather general findings of fact, and then found that the Union rejected the proposal without good cause and without making any counterproposal. Two paragraphs from the bankruptcy judge's findings and conclusions are significant to this court's conclusion that the bankruptcy judge erred in the legal analysis of the factual record.

3. That the Union has rejected the proposal without good cause and has alleged that there were illegal provisions in the hiring of non-Union replacements and the Court finds that it has no jurisdiction or authority to decide that issue but finds that it is not a basis to reject the proposal in total and that the Union should have, in good faith, accepted all other provisions so that there could have been a determination of whether or not that specific proposal was acceptable.

4. That the Union rejected the proposal without good cause and that no counter-proposal was made.

The proposal contained in the May 29, 1985 letter was discussed by representatives of the Union and the debtor in three bargaining sessions, the last of which was held on the evening of June 27, 1985. The Union's representative demanded that three parts of the proposal be taken "off the table" and the negotiations terminated when the debtor refused that demand. Those three proposals were that (1) a union steward would be required on the job only if three or more union employees were on that job; (2) the contract would be modified to permit the employer to hire non-permanent employees as replacements for strikers without any requirement that the new employees become union members; and (3) that the company could hire new employees without paying them union scale wages under the contract, as modified. As to the last provision, the Union insisted that such an agreement was illegal.

At oral argument of this appeal, debtor's counsel suggested that the Union's interpretation of the proposal was incorrect. However, the company president, Mr. Hansen, made it clear in his testimony at the June 28, 1985 hearing, that the company wanted the ability to hire and pay non-union workers at whatever rate they could be hired for, rather than the contract rate. (Tr., p. 38) It is that part of the proposal which was the subject of the quotation from the bankruptcy judge.

■■■ The refusal to consider the legality of the proposal was a clear error of law. While the bankruptcy court has no jurisdiction to adjudicate the issue, the bankruptcy judge had the duty to determine whether the proposal included only those modifications which were necessary to permit the reorganization and whether they treated all affected parties fairly and equitably.

■■■ The bankruptcy judge based the decision approving the rejection of the collective bargaining agreement on the economic need of the debtor to reduce its costs by reducing the wage scale under the contract by 30%. There was no discussion of the non-wage provisions of the proposal. While the bankruptcy judge's findings that the debtor had made a sufficient showing to support the need for the contract wage rate reduction are not clearly erroneous, the failure to consider whether these additional aspects of the proposal were necessary, and whether they were fair and equitable, constitutes a failure to apply the requirements of the law and requires reversal of the order.

■■■ Although this court is not the proper trier of fact in this matter, it is clear from the evidentiary record that there is no support for any findings that these three provisions were necessary for reorganization, or that they were fair and equitable for the Union and its members. On the contrary, these proposals would deny the Union the authority to represent the workers on the jobsites, and would deny the Union its status as the representative for all of the workers on the jobs. To grant an

employer the right to hire workers· at rates lower than the contract scale, and to sub-contract with other companies paying wages lower than union scale is to destroy a principal purpose of any collective bargaining agreement—the assurance of a fair wage for everyone in the work place.

■ It is clear from the legislative history as set out in *Wheeling-Pittsburgh Steel Corp., supra,* that the enactment of this statute, in reaction to the Supreme Court decision in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), was an affirmation by Congress of the strong national policy favoring the functioning of labor organizations in collective bargaining for wages and conditions of employment and in seeking industrial justice for workers. Congress did not intend,· and the statute does not permit, the rejection of labor agreements on a simplistic presentation of a need to reduce labor costs to become more competitive.

The Third Circuit Court of Appeals made this clear in the *Wheeling-Pittsburgh* case when it said that:

> The "necessary" standard cannot be satisfied by a mere showing that it would be desirable for the trustee to reject a prevailing labor contract so that the debtor can lower its costs. Such an indulgent standard would inadequately differentiate between labor contracts, which Congress sought to protect, and other commercial contracts, which the trustee can disavow at will. The congressional consensus that the "necessary" language was substantially the same as the phrasing by Senator Packwood's amendment, which looked to the "minimum modifications ... that would permit the reorganization," requires that "necessity" be construed strictly to signify only modifications that the trustee is constrained to accept because they are directly related to the Company's financial condition and its reorganization.

*Id.* at 1088.

■ The asserted illegality of the discriminatory pay proposal is supported by reference to *Radio Officers' Union of the Commercial Telegraphers Union v. NLRB,* 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954), within which consolidated case opinion appears *Gaynor News Co. v. NLRB,* which holds that such a pay agreement with disparate pay based solely on union membership with the union being the exclusive bargaining agent is a violation of Section 8(a)(3) of the Wagner Act, 29 U.S.C. § 158(a)(3). Such a provision is deemed coercive of the employees to join the union. While there may be conditions under which such discrimination may be justified, and while this court has no doubt that the debtor did not intend the effect of increasing membership in the Union, the Union representatives were wholly justified in refusing to consider this proposal.

■ The bankruptcy judge found that the Union rejected the proposal without good cause and without making a counter-proposal. That finding is clearly erroneous for two reasons. First, in this court's view, the proposal did not meet the requirements of section 1113(b)(1)(A) and, therefore, the issue of whether the Union refused to accept the proposal without good cause under section 1113(c)(2) should not have been reached because the debtor did not cross the threshold by making an adequate proposal. Second, the Union was justified in refusing to consider a proposal which was not adequate, and a part of which appears to be illegal. It was not incumbent upon the Union representatives to make a counterproposal when the debtor's proposal did not meet the requirements of the statute.

■ The debtor has cited *In re: Royal Composing Room, Inc.,* 62 B.R. 403 (Bankr.S.D.N.Y.1986) in support of its position in this case. There, a bankruptcy judge also condemned the union's refusal to accept a debtor's proposal and held that a union must articulate and discuss in detail with the debtor its reasons for declining to accept such a proposal in whole or in part before the hearing. This court expressly rejects that view and holds that it is directly contrary to the mandate of the statute, which makes it incumbent upon a

debtor to make a proposal which meets all of the requirements of the Code. It must be remembered that the entry of an order permitting rejection of a collective bargaining agreement does not negate the obligation of the employer to bargain with the union in good faith to reach a new contract. The situation created by an approved rejection is not different from the expiration of the term of the collective bargaining agreement under the applicable labor laws of the United States.

In summary, it is this court's conclusion that the bankruptcy judge erred in finding and concluding that the debtor's proposal met the requirements of section 1113(b)(1)(A) because the bankruptcy judge failed to consider those provisions of the proposal which the Union demanded be withdrawn, and because upon the evidentiary record made at the two hearings held, it is clear that those provisions were neither necessary to reorganization, nor fair and equitable to the Union, its members, and the other employees previously protected by the existing collective bargaining agreement. Having reached this conclusion, it is clear that the order must be reversed and that the effect of such a reversal is that in further proceedings in reorganization before the bankruptcy court, the collective bargaining agreement must be recognized to have been in existence at least through its remaining term. It is not necessary to consider the other issues which the Union raises on appeal. Accordingly, it is

ORDERED, that the order of the bankruptcy judge, entered July 20, 1985, nunc pro tunc June 28, 1985, is REVERSED.