**In re SIERRA STEEL CORPORATION, Debtor.**

**COLORADO IRON WORKERS PENSION FUND, Colorado Statewide Iron Workers (Erector) Joint Apprenticeship and Training Trust Fund, Iron Workers Welfare Plan of Colorado, and Colorado Iron Workers Vacation Fund, Appellants,**

v.

**SIERRA STEEL CORPORATION, Appellee/Cross Appellant.**

Civ. A. No. 87–K–464.
Bankruptcy No. 86 B 09653 M.

United States District Court,
D. Colorado.

Sept. 14, 1987.

Robert Padjen, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for appellants.

Douglas E. Larson, Williams, Larson, Foster & Griff, Grand Junction, Colo., for appellee/cross appellant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

On March 17, 1987 the late Judge McGrath of the United States Bankruptcy Court for the District of Colorado issued an order permitting debtor to reject its collective bargaining agreement with appellant trust funds. On April 9, 1987, the court issued minutes and an order detailing the findings of fact and conclusions of law on which he based the determination. The trust funds now appeal this decision. Debtor cross appeals. I assume jurisdiction over this appeal and cross appeal pursuant to 28 U.S.C. § 158(a) and Rule 8001(a) of the Rules of Bankruptcy Procedure.

The relevant facts are as follows. Debtor and appellant Ironworker's Union entered into a collective agreement mandating a wage of $20.28 per hour for the latter's members. This agreement covered the period from December 1, 1984 to April 30, 1987. The other appellants are beneficiaries under the agreement. In October 1986 debtor filed under Chapter 11. In November 1986 debtor made a proposal to the Union to modify the agreement by reducing the wage of a specific class of employees from the mandated level to $14.00 per hour. The union rejected any possibility of modifying the agreement and debtor filed a petition under § 1113 to reject the existing collective agreement. This was granted by the bankruptcy judge on March 17 of this year.

In his order of April 9, the Bankruptcy Judge made nine specific findings of fact. These were, and I paraphrase, that debtor made a fair proposal to the union representative demonstrating a willingness to negotiate as required by 11 U.S.C. § 1113, that the union representative rejected the proposal in a fair and equitable manner in refusing to negotiate, that the debtor made a good faith effort to negotiate with the union, that the unwillingness of the union to renegotiate with debtor made it necessary for debtor to reject the union contract. He found further that no excessive benefits were being taken by debtor, that the union was given sufficient time and opportunity to evaluate effectively debtor's proposal, that both debtor and the union demonstrated just cause in offering a proposal and refusing to negotiate respectively, that a balancing of the equities favored allowing debtor to reject the contract and that a rejection of the contract was necessary for the effective re-organisation of debtor[1].

The judge accordingly approved debtor's rejection of its contract with the trust

---

1. The nine statutory requirements contained in Section 1113 have been identified as follows, (1) The debtor in possession must make a proposal to the Union to modify the collective bargaining agreement, (2) The proposal must be based on the most complete and reliable information available at the time of the proposal, (3) The proposed modifications must be necessary to permit the re-organisation of the debtor, (4) The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably, (5) The debtor must provide to the Union such relevant information as is necessary to evaluate the proposal, (6) Between the time of the making proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the Union, (7) At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement, (8) The Union must have refused to accept the proposal without good cause, (9) The balance of equities must clearly favor rejection of the collective bargaining agreement, *In re American Provision Co.*, 44 B.R. 907, 909 (Bkrtcy.D.Minn.1984).

funds and ordered debtor to include in the modified agreement a 'snap back' provision facilitating increased wages to employees in the event of a later improvement in debtor's position. This order was to have prospective effect only.

Appellants take issue with this finding on three fronts. First, they argue the Bankruptcy Court erred in finding the balance of equities favored rejection of debtor's collective bargaining agreement and that all parties were treated equitably. Second, they maintain the bankruptcy court erred in finding the authorized representative of the employees refused to accept debtor's proposal to modify its collective bargaining agreement without good cause. Third, they assert the court erred in finding that a rejection or modification of debtor's collective bargaining agreement was necessary to permit re-organization of debtor.

Debtor, in its cross appeal raises four issues. First, it maintains the court erred in finding the union representative rejected the proposed modifications in the union contract in a fair and equitable manner. Second, it claims the court erred in failing to find explicitly all parties were treated fairly by debtor's proposed modification of the union contract. Third they claim the court erred in finding the union representative demonstrated 'just cause' in refusing to negotiate any proposal by debtor to modify the union contract. Finally, they claim the court erred in ordering the 'snap back' provision to be inserted in the new modified contract.

The standard of review to be employed in appeals of this nature is well known and clearly delineated. Errors of law effected by the bankruptcy judge may be reviewed *de novo*. However, while a court entertaining an appeal from a determination of a bankruptcy judge may disagree with the findings of fact on which the trial court based its determinations, it may only review those findings of fact if it regards the conclusions of the court to have been 'clearly erroneous'.

This standard should generate little difficulty. Here, however, we are dealing with a statutory provision of comparatively recent origin[2] and some confusion inevitably arises from the necessity to distinguish accurately between questions of law and questions of fact. Here, appellants, after outlining the above standard of review, posit in their brief that findings of the bankruptcy court under section 1113 are 'mixed questions of law and fact'. To this end they cite *Wheeling–Pittsburgh Steel v. United Steel Workers*, 791 F.2d 1074, 1091 (3d Cir.1986). This, is an unhelpful and confusing label. I am uncertain what conclusion appellants seek to draw from it. If they are attempting to argue that this somehow entitles them to *de novo* review of such determinations, they are mistaken. The bankruptcy court's interpretation of the statute and its conclusions as to what a debtor must demonstrate before bringing himself within the terms of the provision is clearly a question of law. The court's conclusions, however, as to whether or not a given debtor has actually brought himself within those statutory prerequisites is a finding of fact which will be subject to scrutiny under the clearly erroneous standard, *Truck Driver's Local 807 v. Carey Transportation Inc.*, 816 F.2d 82, 88 (2nd Cir.1987).

Section 1113(c)(3) of 11 U.S.C. dictates the court shall only approve an application for rejection of a collective agreement if it is satisfied the balance of the equities 'clearly favors the rejection of such agreement'.

Appellants propose two main grounds on the basis of which they claim the court erred in its conclusion that the balance of the equities here did favor rejection of the agreement. Primarily they claim the absence of a 'snap-back' provision in debtor's proposed modification of the collective agreement points to the conclusion that the balance of equities do not favor the rejec-

---

**2.** Section 1113 was enacted in response to the decision of the Supreme Court in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). This decision remains an important indicator as to congressional intent in construing the statute, *International Brotherhood of Teamsters v. IML Freight, Inc.*, 789 F.2d 1460, 1461 (10th Cir.1986).

tion of the agreement. To this end they rely upon the decision in *Wheeling–Pittsburgh* and the decision of this court in *In re Mile Hi Metal Systems, Inc.*, 67 B.R. 114, 16 CBC 2d 667 (D.Colo.1986). The fact the court itself imposed such a clause, it claims is irrelevant, since the bankruptcy court had no power to impose a snap back agreement in the context of a rejection hearing.

■ I do not agree with appellants' claim that the inclusion of a snap back provision in an employer's proposed alteration of a collective agreement is necessary before the court can find the balance of equities favor rejection of the original agreement by the court. Such clauses are commonly sought by the court in determining whether this criterion has been satisfied, *In re William P. Brogna and Co., Inc.*, 64 B.R. 390 (Bkrtcy.E.D.Pa.1986) but I do not accept that the inclusion of such a clause is mandatory. In *Wheeling–Pittsburgh* the court did not posit the absolute necessity for such an offer, but instead asserted that in the particular circumstances of that case and given the nature of the proposal the worker's were asked to accept one should have been included in that initial proposal 791 F.2d at 1093. Further, I note that in *Matter of Walway Company*, 69 B.R. 967, 974 (Bkrtcy.E.D.Mich.1987) it was specifically held the absence of such a proposal was not fatal to the balance of equities requirement. A judge should, however, consider the absence of such a clause in determining whether the balance of equities test has been realized, *Walway* at 974, *Wheeling–Pittsburgh* at 1091, 1092.

■ Here, the judge did consider whether such a clause was necessary and decided that it was—although it is not clear from the record whether he based this finding of necessity upon the facts of the case as before him or upon a mistaken belief that the decision in *Wheeling–Pittsburgh* demanded that one be present. In any event he imposed one upon the parties himself. Both appellant and debtor, in its cross-appeal brief, submit that the court had no jurisdiction in a rejection proceeding to do this. I agree. Nowhere in section 1113 is

provision made for the court to exercise this type of rectifying function and it is illogical on the one hand to allow a claim that a modified contract was rejected without 'just cause' as demanded by section 1113(c)(2) and on the other to alter that agreement. On this basis alone, the case must be remanded to the bankruptcy court so that consideration can be given to the question of the absence of a snap back clause in the proposed agreement as originally modified—as *Wheeling–Pittsburgh* demands—without the fallback facility being available to the court of imposing one itself.

■ Second, appellants maintain union employees are also treated inequitably in relation to creditors and non-union employees. Appellants assert creditors should be paid less than the full amount and that no evidence was tendered that non-union employees were not requested to accept wage reductions. Appellants here simply misconceive the character of the requirements imposed by section 1113. These requirements must be construed in the light of the overriding context of the provision—the success or otherwise of reorganization. In so construing the section a flexible test should be utilized and the circumstances of the debtor-union relationship construed as a whole. Here there were a number of factors on the basis of which the court could find the parties were treated equitably, not least of all the fact management themselves had taken substantial wage reductions and injected personal resources into the company. I decline to interfere with the trial judge's determinations in this regard.

The next ground of appeal is to the effect the court erred in finding the authorized representative of the employees refused to accept the debtor's proposal to modify the original collective agreement without good cause. On this point these proceedings have been characterized by an inexplicable sense of confusion. Section 1113(c)(2) reads as follows:

(c) The court shall approve an application for rejection of a collective bargaining

agreement only if the court finds that
...

(2) the authorized representative of the employees has refused to accept such proposal with*out* just cause.

Emphasis added.

This quite clearly demands the court may only approve an application for rejection of a collective agreement if it finds the authorized representative of the employees rejected the proposal made by the debtor 'without good cause'. The trial court granted debtor's motion to reject the collective agreement it had with the union. Yet at paragraph seven of its findings of fact, it asserted the union 'demonstrated just cause in refusing to negotiate' given what the court characterized as 'the position and constraints' then facing it. These constraints involved solely the effect allowing a drop in salary which the proposal required would have on other union employees working in similar concerns. These constraints further caused the judge to characterize the rejection by the union representative of the proposals of debtor as 'fair and equitable'. In the transcript of his opinion on the point he referred to the decision of the union to reject the agreement as 'justifiable' and 'the right thing' (p. 3), and as 'judicious' (p. 4). He further asserted the union showed 'good cause' in acting as it did (p. 6).

The confusion which this provision generated in the court has by a disturbing process of osmosis infected appellant and debtor. The appellant appeals the judge's finding that its representative acted without good cause [3] in rejecting the proposed modifications, despite the fact the judge held it *had* acted with good cause in so acting [4]. The debtor, however, reads things differently. In its cross appeal it realizes the judge has found the employee's representative acted with good cause. It does not realize, however, what the statute requires.

So it appeals the court's finding of good cause on the part of the union stating;

A Court may not approve a Debtor's application to reject a Collective Bargaining Agreement unless it finds that the authorized representative of the Union refused to accept a Debtor's proposed modified contract with good cause.

Cross Appellant's Brief at p. 12.

Here the judge stated specifically his view that the union *had* good cause for rejecting the agreement. If this was his belief, the terms of section 1113(c)(20 clearly required that he dismiss debtor's petition. On this basis, therefore the appeal should be allowed.

■ This, however, raises an interesting problem. The judge clearly effected an error of law in assuming that although he found good cause had been shown, he could nonetheless grant debtor's motion. But he also erred in the facts he considered in arriving at the conclusion that good cause had been shown. He based this determination on the fact of other contractual obligations facing the union. He should not have considered these extraneous agreements. As the court in *In Re Salt Creek Freightways* 47 B.R. 835, 841 (Bkrtcy.Wyo. 1985) stated

In determining whether the Union has refused the debtor's proposal 'without good cause' the court will not consider any other union contract ... which is not directly before the court.

This creates something of a circular effect—the court was so wrong it was right. The effect of the double error is to leave us back where we started. Having considered this matter carefully, I am of the opinion the case will have to be remanded to the bankruptcy court on this point also where the question as to whether the union had good cause for rejecting debtor's proposals can be considered properly. In particular I point out that the stonewalling of debtor's

---

**3.** Appellants should note in this context that once debtor has shown the union refused to accept its proposal, the burden is on them to prove it did so without just cause, *In re American Provision Co.*, 44 B.R. at 910.

**4.** Paragraph 7 of the judge's order of April 9 reads as follows; "Both the Debtor and the union demonstrated just cause in offering a proposal and refusing to negotiate, respectively, given the position and constraints of each".

proposal conducted by appellants will in itself provide strong evidence of lack of good cause on the part of the union, *Truck Drivers Local*, 816 F.2d at 92. Accordingly, both the appeal and the cross appeal on this point will be granted.

■ Appellants' final contention is that the judge erred in his determination that the rejection of the contract was necessary to re-organization as required by sub sections (b)(1)(A) and (c)(1) of section 1113. Appellants' claim the proposed wage cuts would not result in substantial savings to debtor, since it would still be obliged to pay the present rate to its employees for work done on government jobs which constitute 60% of debtor's business. The trial judge determined that it would result in beneficial savings. I decline to overturn his finding in this regard, not least of all because I can see how the capital gained by debtor as a result of this proposal might well represent the difference between solvency and insolvency.

The first ground of the cross-appeal is that the court erred in finding the union rejected the proposed modification of the contract in a fair and equitable manner. This is really the same argument as that which I have discussed above in the context of the 'good cause' problem. I shall consider this ground no further. The second main contention here is that the court should have specifically found that all parties were treated fairly by debtor's proposed modification of the contract. I can see no merit to this claim. The third ground raises directly the 'just cause' problem already discussed. The fourth argument relates to the court's jurisdiction to impose the 'snap back provision' and again I have already given this due consideration above.

Accordingly, it is ORDERED that this appeal and cross appeal are allowed. The case is REMANDED to the bankruptcy court for findings consistent with the terms of this opinion.