INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW and Local 1431, Appellants,

v.

GATKE CORPORATION, Appellee.

No. S88–596 (RLM).

United States District Court,
N.D. Indiana,
South Bend Division.

March 29, 1991.

Richard J. Swanson, Janice E. Kreuscher, Indianapolis, IN, for appellants.

Michael Armey, Warsaw, IN, for appellee.

Patricia E. Primmer, Jeffrey Johnson, South Bend, IN, for Creditors Committee.

## MEMORANDUM AND ORDER

MILLER, District Judge.

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local No. 1431 (collectively, "the Union") appeal the bankruptcy court's order granting the debtor-in-possession's petition to reject, under 11 U.S.C. § 1113, a collective bargaining agreement that had two months to run. For the reasons that follow, the court affirms.

The debtor-in-possession, Gatke Corporation, filed its Chapter 11 petition on March 2, 1987, almost ten months into the collective bargaining agreement at issue here. The agreement was to expire on October 25, 1988. Gatke suffered an annual loss of $397,000.00 in 1987. The Union and Gatke began negotiations with respect to the collective bargaining agreement in early August, 1987. Offers and counter-offers passed between the parties until Gatke made its final proposal five months before the agreement's expiration; the union rejected the proposal by a unanimous vote. Gatke filed its petition to reject the bargaining agreement nineteen days later.

The bankruptcy court, applying the nine-part test set forth in *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr.D.Minn. 1984), concluded that Gatke had made a sufficient showing under § 1113 and that the evidence warranted granting the petition. Additional facts found by the bankruptcy court are included as necessary in the discussion below. Those findings are not clearly erroneous, and so are binding on this court. Bankr.Rule 8013. The bankruptcy court's conclusions of law are reviewed *de novo*.

■ The Union first contends that the bankruptcy court erred as a matter of law in determining that Gatke's final proposal satisfied the requirements of § 1113. Section 1113(b)(1)(A) requires the employer to "make a proposal to [the Union] which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably...." The bankruptcy court viewed "necessary" as meaning not only that which is essential, but also that which will result in an enhanced probability of a successful reorganization, citing *In re Amherst Sparkle Market, Inc.*, 75 B.R. 847, 851 (Bankr.N.D.Ohio 1987), and *In re Walway Co.*, 69 B.R. 967, 973 (Bankr.E.D.Mich. 1987).

The Union argues that the bankruptcy court's view was an unjustifiably broad reading of § 1113, which was intended to reject and limit the holding in *NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), that the debtor need only show that the labor agreement burdens the estate and that a balance of the equities favors rejection. Citing principally the legislative history discussed in *Wheeling–Pittsburgh Steel Corp. v. United Steelworkers of America, AFL–CIO–CLC*, 791 F.2d 1074, 1082–1088 (3rd Cir.1986), the Union maintains that § 1113 was intended to embody Senator Packwood's "minimum modification" approach that would allow only those modifications the must be accomplished if the reorganization is to suc-

ceed. The *Wheeling–Pittsburgh Steel* court held:

> The Congressional consensus ... requires that "necessity" be construed strictly to signify only modifications that the trustee is constrained to accept because they are directly related to the Company's financial condition and its reorganization. We reject the hypertechnical argument that "necessary" and "essential" have different meanings because they are in different subsections. The words are synonymous.

791 F.2d at 1088. The *Wheeling–Pittsburgh Steel* court further concluded that in determining necessity of modification, the court should focus on the short term goal of preventing liquidation rather than upon the longer range goal of successful reorganization.

The Second Circuit expressly rejected the *Wheeling–Pittsburgh Steel* view in *Truck Drivers Local 807 v. Carey Transportation, Inc.,* 816 F.2d 82 (2nd Cir.1987). The Second Circuit noted that Congress considered but rejected Senator Packwood's· language, suggesting that Congress "was uncomfortable with language suggesting that a debtor must prove that its initial post-petition proposal contained only bare-minimum changes", 816 F.2d at 89, and that a bare minimum requirement would thwart the collective bargaining process. The court concluded "that the necessity requirement places on the debtor the burden of proving that its proposal is made in good faith, and that it contains necessary, but not absolutely minimal, changes that will enable the debtor to complete the reorganization process successfully." 816 F.2d at 90. The Second Circuit also disagreed with the Third Circuit as to the focus for the necessity inquiry, holding that in order to evaluate the probability of successful reorganization, the bankruptcy court necessarily must look into the debtor's ultimate future and estimate what the debtor needs to attain financial health. 816 F.2d at 89.

 The Second Circuit's position in *Truck Drivers Local 807 v. Carey Transportation* is the more persuasive and better-reasoned approach. Had Congress intended to adopt Senator Packwood's bare minimum requirement, it could have done so. It did not, and should not be said to have done so nonetheless based on the remarks of some of the legislative sponsors. Further, § 1113 was enacted to protect and foster collective bargaining. *In re Century Brass Products, Inc.,* 795 F.2d 265, 273 (2nd Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986). Bargaining is not a practicable goal if one negotiating party is barred from advancing anything other than the absolute minimum that can be accepted if it is to survive. Finally, § 1113 speaks of modification "necessary to permit the reorganization"; the court believes that the Second Circuit's longer term focus, which encompasses the ultimate success of reorganization rather than merely the avoidance of immediate liquidation, is more consistent with the statute.

This court is not alone in its preference for the Second Circuit approach; after briefing in this case was completed, the Tenth Circuit adopted the Second Circuit approach and rejected the approach of the Third Circuit. *In re Mile Hi Metal Systems, Inc.,* 899 F.2d 887, 893 (1990). The Second Circuit's approach is far from toothless; the debtor still must make a significant showing to demonstrate necessity. *See, e.g., In re Express Lines, Inc.,* 119 B.R. 1006, 1013–1016 (Bankr.E.D.Wis. 1990); *see also In re Garofalo's Finer Foods, Inc.,* 117 B.R. 363, 372 (Bankr. N.D.Ill.1990). The court agrees with the bankruptcy court that Gatke made such a showing.

 Gatke's proof before the bankruptcy court demonstrated the company's poor financial shape; Gatke was losing $33,-000.00 monthly. Attempts to obtain lending had failed. The company suffered from poor productivity as well as insufficient funds to buy raw materials to meet its orders. The bankruptcy court found, and the evidence supports the finding, that without the changes Gatke proposed for the collective bargaining agreement, the company would be forced to liquidate. *Compare In re William P. Brogna and*

*Co.,* 64 B.R. 390 (Bankr.E.D.Pa.1986); *In re Valley Kitchens, Inc.,* 52 B.R. 493 (Bankr.S.D.Ohio 1985).

Because productivity was a problem in addition to cash flow, Gatke's inclusion of non-monetary changes such as transfer policies does not cause its proposal to fail the requirements of § 1113(b)(1)(A). The court properly looked to the modification offer as a whole, *In re Royal Composing Room, Inc.,* 848 F.2d 345, 348 (2nd Cir.1988), and the proposal's non-monetary aspects addressed the company's non-monetary production problems.

■ The proposed modification would have extended the collective bargaining agreement by three years. The bankruptcy court found that the proposed extension would enhance the chances for reorganization by strengthening buyer confidence. Because the proposed extension did not exceed the period of the agreement in existence, the court finds no error of law. *Cf. Truck Drivers Local 807 v. Carey Transportation,* 816 F.2d at 90; *Wheeling–Pittsburgh Steel v. United Steelworkers,* 791 F.2d at 1089–1091.

In a related argument, the Union maintains that the absence of a "snap-back" or profit-sharing provision in Gatke's final proposal, coupled with the proposed three-year extension, render the bankruptcy court's ruling erroneous in three ways: first, it rendered the proposed extension unnecessary; second, it precluded fairness and equity to all parties; and third, it affected the balance of equities. It is true, as the Union contends, that the employer's unwillingness to include a "snap-back" or like provision in its proposal for an extension may be pertinent to whether the extension is necessary, *Wheeling–Pittsburgh Steel v. United Steelworkers,* 791 F.2d at 1090, whether the rejection is fair and equitable to all parties, *In re Brogna,* 64 B.R. at 392, and whether the balance of the equities clearly favor rejection of the collective bargaining agreement. *In re Walway Co.,* 69 B.R. 967, 974 (Bankr.E.D.Mich. 1987). It is not, however, determinative. *In re Walway,* 69 B.R. at 974.

Here, the bankruptcy court considered the absence of any proposal for a "snap-back" or profit-sharing provision and concluded that in light of the company's financial position, the absence of such a provision did not tip the balance of the equities. This court finds no error. The bankruptcy court noted Gatke's willingness to accept the Union's proposals if any produced the necessary savings. The Union, which suggested no scheme involving a "snap-back" or profit-sharing provision that would produce sufficient savings, should not be heard to fault the company for failing to suggest one. The absence of a "snap-back" provision did not affect the proposal's fairness to all parties in this case, because the concessions sought by the proposal would have affected equally all employees, including management and non-union clerical employees.

By the time of filing the petition in bankruptcy, Gatke was behind in payment of health insurance premiums for its employees; it appears that this failure continued up to the time Gatke filed its petition for rejection of the collective bargaining agreement. Gatke's final proposal for modification of the agreement proposed dropping the existing health insurance coverage and allowing people to obtain their own coverage. The proposal said, "At the present time we see no way to cover the past claims."

The Union contends that this provision renders the bankruptcy court's holding erroneous in two respects. First, the provision was unnecessary to reorganization, defeating Gatke's right to seek rejection under § 1113(b)(1)(A). Second, the Union argues that it had good cause to reject the proposal because that provision would have subjected it to liability under the Employee Retirement Income Security Act, 11 U.S.C. § 1132. In a related, third argument, the Union argues that by not paying insurance premiums or vacation pay during the pendency of the bankruptcy petition, Gatke unilaterally terminated or altered the collective bargaining agreement without leave of court, thus rendering it ineligible to seek rejection under 11 U.S.C. § 1132(f). The court is unpersuaded.

A union is justified in refusing to consider a debtor's proposal that contains a provision that would open it to liability. *In re Mile Hi Systems, Inc.,* 67 B.R. 114, 118 (D.Colo.1986), *vacated on other grounds,* 899 F.2d 887 (10th Cir.1990). The Union apparently reads the proposal's explanatory clause, "At the present time we see no way to cover the past claims", as a proposal to dishonor prior claims. The court does not so read that sentence. The proposal speaks of dropping existing coverage, not dishonoring existing claims. The bankruptcy court found that the proposal to drop health insurance coverage replaced earlier Gatke proposals for wage reductions. The proposal plainly speaks to the future. The bankruptcy court committed no error of law in finding it to be reasonable and necessary. The Union has cited no authority for the proposition that a modification to a collective bargaining agreement renders a union liable if health insurance is no longer provided at the employer's cost. The bankruptcy court committed no error of law in finding that the Union rejected the proposal without good cause.

The Union has presented no authority for the proposition that a debtor's non-payment—before and after filing in bankruptcy—of insurance premiums and vacation pay without leave of court constitutes a unilateral termination or alteration of the collective bargaining agreement within the meaning of § 1132(f). The financial woes that led to the non-payment are well-documented in the bankruptcy court's findings. The Union has filed administrative claims in the bankruptcy court with respect to Gatke's unpaid obligations. The record does not support a conclusion that Gatke unilaterally terminated or altered the collective bargaining agreement in violation of 11 U.S.C. § 1113(f). It be curious to hold that § 1113, enacted to restrict rejection of collective bargaining agreements, is available only to companies with financial health sufficient to allow them to pay all obligations under the agreement.

Finally, the Union contends that in balancing the equities, the bankruptcy court should have considered the short term remaining in the existing agreement. The bankruptcy court did so. While it did not specifically recite the concern that petitions for rejection not be used as collective bargaining ploys, the bankruptcy court acknowledged that the bargaining table is the appropriate arena for the sort of decisions posed by the parties' proposals and exhorted the parties to return to that arena. One may disagree with the bankruptcy court's discussion at pages 22–25 of its decision, but it cannot be said that the court failed to consider the collective bargaining agreement's brief remaining life.

The enactment of § 1113 and the cases decided under that provision, even those applying the slightly lesser standard of necessity employed by the Second and Tenth Circuits, indicate that collective bargaining agreements are not to be set aside lightly. A debtor seeking such relief bears a heavy burden. The bankruptcy court's thorough and well-reasoned opinion recognized those concerns and concluded that Gatke had met that heavy burden. The facts and law support that holding. Accordingly, the bankruptcy court's order granting the debtor's petition for rejection of the collective bargaining agreement should be, and hereby is, AFFIRMED.

SO ORDERED.